**Khasheem Aaa AL SHAKIR, et al., Plaintiffs,**

v.

**Norman A. CARLSON, Director Bureau of Prisons, and Harold Miller, Warden U.S. Penitentiary, Lewisburg, Defendants.**

**Civ. No. 80–0033.**

United States District Court, M.D. Pennsylvania.

June 29, 1984.

See also 762 F.2d 992.

Khasheem AAA Al Shakir, a/k/a Robert B. LaVan, Jihad D.A. Mu'mit, a/k/a David Bryant, Hajj M.M. Hakim, a/k/a Robert M. Palmer, pro se, and for all plaintiffs.

Frederick M. Stanczak, Douglas Schoppert, Susquehanna Legal Services and Lewisburg Prison Project, Inc., Williamsport, Pa., for plaintiffs.

Barbara L. Kosik, Asst. U.S. Atty., Harrisburg, Pa., David Essig, Regional Counsel, Northeast Regional Office, Philadelphia, Pa., for defendants.

### MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiffs filed a civil rights action dated January 10, 1980, pursuant to 28 U.S.C. § 1331, alleging that the defendants' policies and practices at the U.S. Penitentiary, Lewisburg, violate their right to practice their religion under the First Amendment

of the United States Constitution and their right to equal protection of laws under the Fifth Amendment to the United States Constitution. In previous rulings, the court dismissed all of plaintiffs' claims except: (1) the plaintiffs' allegation that defendants have provided Jewish inmates with a kosher kitchen but have refused to supply Muslim inmates Halal food and separate kitchen facilities and, (2) plaintiffs' contention that the defendants excused Jewish and Christian inmates from work assignment on the holy days of their respective faiths but have refused to allow work excuse on the Islamic holy days of Eid-ul-Fitr and Eid-ul-Adah.

Several subsequent conferences were held in an effort to resolve the remaining issues and in April, 1982, the Bureau of Prisons voluntarily adopted a policy excluding Muslim inmates from work assignments on the above-mentioned holy days. Efforts were made to reach an agreement on the dietary issue but proved unsuccessful. Accordingly, the case was listed for trial on June 4, 1984, preceded by a pretrial conference on June 1, 1984. At the pretrial conference, after extensive discovery, counsel for the parties reached a tentative settlement prompted by the adoption by the Bureau of Prisons on May 30, 1984, of Operations Memorandum No. 110–84 (5360) which provided for a Modified Common Fare Religious Diet Program. This program would serve foods that largely require no preparation, contain no pork or pork derivatives, do not mix meat or dairy products in the service of food items, and are served with utensils that have not come in contact with pork or pork derivatives.

To the extent practicable, this diet would contain approximately three hot entrees a week to accommodate the religious diet needs of the Muslim and Jewish inmates and would meet or exceed the required dietary allowances established by the Food and Nutrition Board of the National Academy of Sciences. This dietary program would be conducted for a period of at least three to six months as a continuation of a similar pilot project initiated in the South Central Region of the United States in December, 1983. If the program is successful it would be continued indefinitely. The cost of the Modified Common Fare Religious Diet is projected to cost substantially more per inmate than the non-religious diet. Because of the ostensible agreement between counsel, the trial set for June 4, 1984, was continued and plaintiffs' counsel was to meet with plaintiffs to seek their approval of the settlement.

On or about June 5, 1984, the court was advised by plaintiffs' counsel that his clients had refused the proposed settlement because defendants (a) won't expressly concede on the record that plaintiffs' religious beliefs are sincerely held and (b) won't promise the Bureau of Prisons will never revert to the prior practice of refusing to excuse plaintiffs from work on the holy days of Eid-ul-Fitr and Eid-ul-Adah. On that same day, at the court's request, David R. Essig, Esq., Regional Counsel for the Bureau of Prisons, filed an affidavit in which he stated that the Bureau of Prisons would continue to recognize the two Islamic holy days as non-work days and would implement the Common Fare Diet as proposed. In light of these concessions, the court directed the parties to file briefs on the issue of mootness. Defendants filed a Motion to Dismiss and a Brief in Support Thereof on June 12, 1984, and plaintiffs filed their brief on June 13, 1984. The motion is now ripe for disposition.

Plaintiffs profess to be members of the Sunni Muslim faith. They contend that the dietary requirements of their religion are as follows: (a) foods which the plaintiffs are allowed to eat are known as Halal and foods which plaintiffs are not allowed to eat are known as Haram; (b) Sunni Muslims are forbidden to eat meat from an animal which has not been slaughtered according to Islamic law; and, (c) the Qur'an, which to the Muslims is the word of God, provides that one of the purposes that animals were given to man is for nourishment and consumption. Plaintiffs interpret this as an affirmative command to consume meat in their diet. At the time this litigation commenced, the federal prison regulations attempted to identify objectionable food items by providing, at 28 C.F.R. § 547.11, that food items on the menu at

federal prisons identified with an asterisk are food items to be prepared or seasoned with pork or pork derivatives. Plaintiffs, nevertheless, assert that the meat items on the menu at United States Penitentiary, Lewisburg, are not Halal but that pursuant to 28 C.F.R. § 547.12, Jewish inmates are entitled to and receive kosher foods (foods prepared and slaughtered in accordance with Jewish dietary law).

The plaintiffs' other allegation concerns work assignments for holidays. They assert that prior to the commencement of this litigation, defendants have excused Jewish inmates from work assignments for the Jewish holy days. Sunni Muslim inmates were not accorded comparable treatment. As previously noted, in April of 1982, defendants did adopt a policy of excusing plaintiffs from work assignment on the Muslim holy days and this remains the policy of the defendants to date. Plaintiffs assert, however, that the defendants have the authority to revert to their prior policy of refusing to excuse plaintiffs from work on their holy days. In their brief, plaintiffs acknowledge that: "[t]he only remaining issues are whether there is a First Amendment freedom of religion or a Fifth Amendment equal protection claim of entitlement to a particular diet and whether there is a First Amendment freedom of religion or a Fifth Amendment equal protection claim of entitlement to work proscription on Muslim holy days." It is also conceded that plaintiffs have been excused from work assignments on the holy days of Eid-ul-Fitr and Eid-ul-Adah. In his affidavit, Mr. Essig represented that defendants agree plaintiffs have a First Amendment and a Fifth Amendment equal protection right to a religious diet and work proscription which conforms to their religious belief on an equal basis with other religious groups at Lewisburg. In this regard, the Jewish kosher kitchen will be closed. Consequently, it would appear that the parties are in agreement and that no dispute remains. However, plaintiffs want defendants to concede affirmatively that they are sincere in their religious beliefs and, apparently a guarantee, that defendants will never revert to their prior policy of refusing to excuse plaintiffs from work on two recognized holy days. Because defendants refuse to accede to these demands, plaintiffs maintain that the remaining issues are not moot. The court does not agree.

The law is clear that the court has no jurisdiction to hear a case in which there is no justiciable case or controversy. A controversy must exist not only at the commencement of the action but also must remain real and substantial at all stages of litigation. Therefore, when actions of the parties or a subsequent law or regulation causes the controversy to cease, the action is no longer justiciable for the reason that it is moot. It is true, however, "that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *See United States v. W.T. Grant Co., Inc.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). In such a case, a controversy may remain to be settled, as the defendant is free to return to its old ways. *Id.* Jurisdiction may not be properly invoked, though, when it can be clearly shown that there is no reasonable expectation that the violation will recur and the relief granted has completely eradicated the effects of the alleged violation. *Id. See also County of Los Angeles v. Davis*, 440 U.S. 625, 631–32, 99 S.Ct. 1379, 1383–84, 59 L.Ed.2d 642 (1979); *Hudson v. Robinson*, 678 F.2d 462, 465–66 (3d Cir.1982). The Third Circuit Court of Appeals, in a case involving prisoners' rights within the law library, addressed the mootness issue stating: "the district court specifically found that defendants have no intention of reversing any of the changes in policy or physical layout concerning the operation of the law library at Huntingdon. In light of this finding, we hold that this issue is moot.... There is no reason to believe that the institution will change its policy.... Where there is no constitutional violation and no reason to believe that a prison will alter its procedures in any manner that is violative of the Constitution, a federal district court should not question the wisdom of a state's prison policies." *See Hudson v. Robinson*, 678 F.2d at 465–66.

In the case *sub judice*, the plaintiffs are not seeking damages but are seeking a declaratory judgment that their allegedly disparate religious treatment was unconstitutional and an injunction against the continuation of such treatment. The Bureau of Prisons in recognition of the plaintiffs' constitutional rights has implemented policies which afford the plaintiffs the requested dietary and work proscription practices of their religion on an equal basis with other religious groups at the United States Penitentiary at Lewisburg. This is more than a mere cessation of a challenged practice ... it is an affirmative policy that recognized plaintiffs' constitutional rights and adopted a program to implement that recognition. Based on the affidavit of David Essig and the proposed Stipulation of Dismissal submitted by the Government, the court finds that there can be no reasonable expectation that the Bureau of Prisons will alter its policies *in a manner that is violative of the Constitution.* In light of the fact that the Bureau of Prisons has completely eradicated the effects of the alleged disparate treatment and that the plaintiffs have and will continue to be afforded the opportunity to practice their religious beliefs on an equal basis with other religious groups at the United States Penitentiary at Lewisburg, the court finds that the issues remaining in this case are moot.

A recognition, for settlement purposes, of plaintiffs' sincerity is implicit in the concessions made in Essig's affidavit. Defendants should not be precluded from questioning sincerity past or present, in the event that future litigation develops. It is sufficient for the purpose of disposing of this litigation that defendants do not question plaintiffs' sincerity. As to an inflexible commitment that either present work proscription or dietary policies will not be changed, that, similarly, cannot be "cast in concrete." Budget limitations and other presently unforeseeable circumstances developments may make a change in position necessary and could be appropriately raised in futuro even if this court were to grant injunction in favor of plaintiffs. Denial of work proscription benefits to all religions may also be required under certain conditions. In sum, I believe defendants have gone as far as they are constitutionally required to under the facts of this case.

An appropriate Order will enter.

## ORDER

In accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) Defendants' motion to dismiss for mootness is granted.

(2) The Clerk of Court is directed to close this case.

(3) Any appeal from this Order is deemed frivolous, lacking in probable cause and not in good faith.