892 F.2d 1043
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAKI AKAI-ISMALILI-MAHAMMAD, Plaintiff-Appellant,
v.
Sam CHADWICK, Debbie Williams, Winfred Gooch, Otie Jones,
Wayne Casteel, Suzan Hiatt, J. Fowler, Steve Norris, Howard
Hood, Ron Hodges, Terre Marshall, Brad Smythe, Carol
Schaefer, Fay Jeffers, Juanita Daugherty, Stanley Shanks,
Dr. Delvin E. Littell, Archie Goddard, James Worthington,
Mark A. Hudson, and Paul Flanders, Defendants-Appellees.
 No. 89-5008.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1990.
 
 Before KEITH, NATHANIEL R. JONES and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jaki Akai-Ismalili-Muhammad, a Tennessee state prisoner, appeals from a grant of summary judgment to defendants in this action. In the district court, Mahammad made a number of claims, including that prison officials did not provide him with an administrative segregation hearing comporting with due process prior to his placement in involuntary administrative segregation, that such officials were deliberately indifferent to his serious medical needs, and that they denied him access to the courts. Viewing the evidence presented in the light most favorable to Mahammad, we now affirm the decision of the district court in all respects.
 
 
 2
 * Mahammad, a black male, was incarcerated at Fort Pillow State Farm in Tennessee on August 29, 1986. On September 20, Mahammad was placed on involuntary administrative segregation. On September 26, while at Fort Pillow, Mahammad fractured his left index finger in a fight with prison guards. He was treated at the hospital at the Tennessee States Prison in Nashville. On September 30, he had a closed reduction of the fracture.
 
 
 3
 On October 26, Mahammad was transferred to a hospital in Nashville for an open reduction and internal fixation of his left index finger. Mahammad refused surgery on his finger on October 28. Instead, his finger was splinted and Mahammad was discharged from the hospital. On January 6, 1987, Mahammad saw an orthopedic specialist for hand injuries in Nashville. Neither surgery nor a formal physical therapy program was indicated at that time.
 
 
 4
 Mahammad was transferred to Brushy Mountain State Penitentiary on January 29, 1987; he continued on IAS status while at Brushy Mountain. He was counseled at Brushy Mountain by Paul Flanders and Ron Hodges.
 
 
 5
 Dr. Delvin Littell, a contract physician with Brushy Mountain, first saw Mahammad on February 18, 1987. After this meeting, Littell arranged a second consultation about Mahammad's finger with the orthopaedic specialist in Nashville on May 4. In the May 4, 1987, consultation, the specialist reported no change in Mahammad's finger and found no need for any surgery or other intervention.
 
 
 6
 On November 16, 1987, Mahammad was charged with extortion by health administrator Suzan Hiatt. Apparently, Mahammad had sent Hiatt a threatening letter. Lieutenant J. Fowler authorized the disciplinary report. On November 20, Mahammad was tried before a disciplinary review board consisting of Corporal Sam Chadwick, Debbie Williams, and Winfred Gooch.
 
 
 7
 Mahammad allegedly became violent after he was brought into the hearing room and told that the prison official advisor he requested could not represent him. Mahammad alleges that Chadwick took him aside and called him various racial names. Because of his violent outburst, he was tried in abstentia. He was found guilty, and given 30 days punitive segregation. Mahammad appealed this decision and Warden Otie Jones denied the appeal.
 
 
 8
 On December 8, 1987, Mahammad brought an action against various defendants for violations of his rights under 42 U.S.C. § 1983. This complaint was amended on December 30; in this amended complaint, 19 employees of the Tennessee Department of Corrections, Assistant Tennessee Attorney General Mark Hudson, and a private physician, Delvin E. Littell, were named as defendants.
 
 
 9
 Mahammad requested a preliminary injunction on February 2, 1988, which was denied and the denial was affirmed on appeal. The district court granted Littell's motion for summary judgment on August 8, 1988. The court granted the remaining defendants' motion for summary judgment on October 13. Mahammad timely appealed.
 
 II
 
 10
 Mahammad alleges that his placement in IAS on November 20, 1987 violated his right to due process because he was tried in abstentia. On November 20, the board, consisting of Corporal Sam Chadwick, Debbie Williams, and Winfred Gooch, informed Mahammad that the adviser he requested refused to represent him. One staff advisor would represent him, but Mahammad did not want this person representing him. The board refused to grant him a continuance.
 
 
 11
 Mahammad alleges that Chadwick took him aside, away from the other board members, and subjected him to various racial slurs. The board formally found Mahammad to be belligerent, and he was tried in abstentia.
 
 
 12
 The government contends that Mahammad's hearing was constitutional and complied with Wolff v. McDonnell, 418 U.S. 539 (1974). In particular, Mahammad received advance notice of the hearing and he was allowed to present evidence on his behalf. A written statement was made by the fact finders. Thus, the government asserts that Mahammad's due process rights were not violated and that the district court properly granted summary judgment to the defendants on this claim. We agree.
 
 
 13
 It is further clear under Tennessee Department of Corrections policy that a prisoner may be tried in abstentia if he becomes too belligerent. Tennessee Department of Corrections Administrative Policies and Procedures, Index # 404.10, paragraph VI.C.1.b.5 (effective January 1, 1984). Given the compelling need for prison safety, such a trial in this situation comports with due process. Cf. Wolff v. McDonnell, 418 U.S. 539 (1974).
 
 
 14
 Mahammad alleges that he did not have an IAS reclassification hearing within 72 hours of being transferred from Fort Pillow (where he was on IAS) to Brushy Mountain (where he continued in IAS). He alleges that this placement in IAS at Brushy Mountain is separate from, and not a continuation of, his IAS at Fort Pillow. Thus, he should have gotten a new IAS hearing, and not merely a periodic 30-day review of his IAS. We find that his transfer within the Tennessee system did not create any constitutionally mandated need for a new IAS hearing. Thus, the failure to provide Mahammad with one does not violate the United States Constitution.
 
 III
 
 15
 Mahammad alleges that a number of medical personnel at Brushy Mountain have given him inadequate medical care. Improper heating, venting, and cooling at Brushy Mountain have allegedly exacerbated his respiratory problems. Mahammad alleges that high noise levels at Brushy Mountain aggravate his migraine headaches. At Brushy Mountain, he complains that medical personnel did not adequately care for his hand problems.
 
 
 16
 He contends that he had blood in his stools and told some nurses about it, but that they refused to take a stool sample. Stanley Shanks, the physician's assistant, gave him hemorrhoid medication for this condition which Mahammad claims was contraindicated for rectal bleeding.
 
 
 17
 In general, Mahammad asserts that the quality of medical review (such as taking vital signs) is low. He alleges that medical personnel will not treat him because he is black. At Fort Pillow, a homosexual inmate allegedly spit on Mahammad. Apparently, some time after that, officials at Brushy Mountain refused to give him an AIDS test after he requested it.
 
 
 18
 Viewing the evidence in the light most favorable to him, we find that Mahammad has not presented evidence sufficient to indicate that prison officials or Dr. Littell were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97 (1976). At best, Mahammad has alleged that his view of the best course of medical treatment differs from that of prison officials. This contention does not state a constitutional violation.
 
 IV
 
 19
 Mahammad alleged that he informed prison personnel about his inadequate medical treatment and lack of due process in his IAS hearing. Mahammad apparently informed Attorney General Hudson, Commissioner Norris, Wardens Jones, Goddard and Casteel, Captain Worthington, Brad Smythe, Terre Marshall, counselors Paul Flanders and Ron Hodges, and health administrator Suzan Hiatt about these problems.
 
 
 20
 Mahammad has failed to demonstrate how these persons could have remedied these problems if they had known about them. They cannot be held liable for any purported constitutional violations over which they had no control. See Monell v. New York Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1970). Further, viewing the evidence in the light most favorable to Mahammad, he has not demonstrated deliberate indifference to a "serious medical need" and thus cannot charge these officials with a constitutional violation for their alleged failure to take action. See Estelle v. Gamble, 429 U.S. 97 (1976).
 
 V
 
 21
 Mahammad alleges that the head of the mailroom, Juanita Daugherty, refused to put postage (at the state's expense) on his mail and returned it to him. Many of these pieces of mail were to persons, Mahammad contends, who were attorneys, such as the U.S. attorney and a private attorney. On one occasion, the mailroom allegedly opened some mail which was addressed to an attorney in Texas who was involved in a case which concerned Mahammad. Daugherty also allegedly opened mail from the American Civil Liberties Union marked "privileged," and mail from an attorney in California who handles prisoner cases. He also contends that she takes information out of his mail.
 
 
 22
 In regard to his legal mail, we find that Mahammad has not demonstrated "actual injury," and thus cannot claim that he was denied meaningful absence to the courts. Hudson v. Robinson, 678 F.2d 462, 466 (3rd Cir.1982). The one case dismissed by the Sixth Circuit (allegedly because of mishandling by the prison) had already been closed at the time of the alleged incident, and thus no injury could have accrued from the alleged failure of the mailroom to forward this mail. Daugherty stated that she did not refuse to forward his legal mail. Non-legal mail is subject to being opened to check for contraband. Mosby v. Mabry, 697 F.2d 213 (8th Cir.1982). Viewing the evidence in the light most favorable to Mahammad, we affirm the grant of summary judgment to the defendants.
 
 VI
 
 23
 Mahammad apparently informed Corporal Howard Hood that he was not receiving his migraine medication. Hood informed Mahammad that his grievance was "non-grievable." Mahammad contends that the failure of the prison grievance system to redress this complaint amounts to a constitutional violation. The district court granted summary judgment to the defendants on the ground that a general inmate grievance procedure is not constitutionally required. See United States ex rel. Wolfish v. Levi, 439 F.Supp. 114, 163 (S.D.N.Y.), aff'd sub. nom., Wolfish v. Levi, 573 F.2d 118 (2nd Cir.), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520 (1979). Even if the state does have such a general procedure, the failure to follow it does not give rise to a section 1983 claim. Azeez v. DeRobertis, 568 F.Supp. 8 (N.D.Ill.1982). Finding no error in the reasoning of the district court on this issue, we affirm the grant of summary judgment on this claim.
 
 VII
 
 24
 Mahammad alleges that he has not received a full reclassification hearing every twelve months, as he claims is mandated by law. Thus, he claims that his due process rights were violated. He charged Norris, Flanders, Hodges, Marshall, Smythe, Casteel, Goddard, and Worthington in this violation.
 
 
 25
 The government presented evidence that Mahammad is entitled to and has received a review (though not a full hearing) of his status every 30 days. The district court granted summary judgment to these defendants. We find no constitutional basis for a periodic full reclassification hearing. The periodic review that Mahammad receives provides him with the process that he is due. Thus, we affirm the grant of summary judgment on this claim.
 
 VIII
 
 26
 Mahammad alleges that Dr. Littell was deliberately indifferent to his need for treatment for his broken finger and refused to give him migraine medication. He also contends that Littell examined him in a non-sterile environment. Viewing the evidence presented on these claims in the light most favorable to Mahammad, we find that Mahammad cannot demonstrate deliberate indifference to his serious medical needs as a matter of law. See Estelle v. Gamble, 429 U.S. 97 (1976). Thus, we affirm the grant of summary judgment to Dr. Littell on this issue.
 
 IX
 
 27
 Mahammad, on appeal, mentions a number of issues for the first time, but provides no proof for them. He asserts that he was beaten and denied due process because of his race, religion, and political views. He asserts that the state is not providing him with inmate legal advisers. He asserts retaliation for filing prior lawsuits. He contends that prison officials confiscated "hundreds" of legal documents.
 
 
 28
 He wants his case transferred from the Eastern District of Tennessee to the Middle District of Tennessee because of the "extreme prejudice" against black and Muslim prisoners in the Eastern District. He contends that the prison staff is all white, and thus suggests that they are racist.
 
 
 29
 On these issues, Mahammad has given us assertions without any facts whatsoever for proof. Thus, we find no compelling reason to accept jurisdiction of these issues on appeal.
 
 X
 
 30
 For the reasons stated above, we affirm the grant of summary judgment to defendants on all counts.