Michael JORDAN, Plaintiff,

v.

Captain BELLINGER,
et al., Defendants.

No. Civ.A. 98–230–GMS.

United States District Court,
D. Delaware.

Nov. 27, 2000.

Michael Jordan, Smyrna, DE, plaintiff pro se.

Ophelia M. Waters, State of Delaware Department of Justice, Wilmington, DE, for defendants.

## MEMORANDUM OPINION

SLEET, District Judge.

### I. INTRODUCTION.

Michael Jordan is presently incarcerated at the Delaware Correctional Center ("DCC") which is located in Smyrna, Delaware. On May 1, 1998, he filed a complaint with this court alleging that three correctional officers at the prison violated his constitutional rights while conducting a search of his cell. According to Jordan, these prison guards seized or destroyed a number of his personal possessions during the course of their search, including numerous legal documents. Jordan also claims that these guards acted unreasonably when conducting their search in violation of his Fourth Amendment rights. In addition, Jordan contends that his right to due process was violated during a subsequent disciplinary hearing which upheld the seizure of his personal items. For

these alleged wrongs, Jordan seeks compensatory damages as well as injunctive relief to prevent similar conduct from occurring in the future. Jordan also seeks to recover for the common law tort of conversion.

Presently before the court is Jordan's motion for summary judgment. *See* Fed. R.Civ.P. 56(c) (2000). In it, he primarily contends that his First Amendment right of access to the courts was violated by the seizure of his legal materials. Jordan also claims that his right to due process was violated during the subsequent disciplinary hearing. His motion will be denied.

First, a recent ruling by the court renders several of Jordan's arguments moot. *See Jordan v. Bellinger*, 2000 WL 1239956, at *3–5 (D.Del. Aug.28, 2000). Specifically, the court has already dismissed Jordan's claim that the seizure of his legal documents violated his First Amendment rights. *See id.* at *3–4 (noting that Jordan had failed to demonstrate that he was actually denied access to the courts) (citing, *inter alia, Hudson v. Robinson,* 678 F.2d 462, 466 (3d Cir.1982)). Likewise, the court dismissed Jordan's due process claims because the common law tort of conversion provided him with a sufficient post-deprivation remedy for the seizure of his personal property. *See id.* at *4–5 (citing *Austin v. Lehman,* 893 F.Supp. 448, 454 (E.D.Pa.1995)).

Second, as far as Jordan's remaining claims are concerned, genuine issues of material fact prevent the court from ruling on them as a matter of law at this juncture. Specifically, it is not clear what transpired during the search of Jordan's cell. Thus, it is not clear whether the defendants acted unreasonably. Also, Jordan's conversion claim turns on whether the defendants wrongfully deprived him of his belongings. However, the propriety of the defendants' actions depends on whether they were lawfully justified in confiscating Jordan's possessions. As a result, the court is precluded from ruling as a matter of law on this claim as well.

Finally, the court reminds Jordan of his obligation to file an amended complaint which clarifies his allegations concerning the search of his person and his cell. While the defendants also have an obligation to provide Jordan with some of the discovery that he has requested, the court will not require them to produce these materials until after Jordan has filed his revised pleading. The following sections explain the reasons for the court's decisions more thoroughly.

## II: BACKGROUND.

According to Jordan, three correctional officers burst into his cell to conduct a search on November 11, 1997. Jordan claims that he was using the toilet at the time. He alleges that he was immediately ordered to stand, handcuffed, and then subjected to some sort of body cavity search which might have occurred in front of other inmates. Jordan claims that these correctional officers confiscated legal papers and other property from his cell even though these materials were permitted by the prison rules. In particular, Jordan takes issue with the seizure of a radio which, he claims, was his personal property.

It seems that a disciplinary hearing was subsequently held to determine whether any of the property seized was in fact contraband. Jordan claims that the hearing officer found that both he and his cellmate were "guilty" of violating prison regulations. According to Jordan, none of his property was returned to him as a result even though his cellmate did receive the personal items which the guards had confiscated.

The defendants paint a slightly different version of events. They contend that the property seized from Jordan's cell exceeded the limit that an inmate is permitted to store in his cell under prison rules. According to the defendants, these regulations prohibit prisoners from storing excess property in their cells for safety and

security reasons. Furthermore, the defendants maintain that the radio which was seized did not belong to Jordan. Instead, they claim, it belonged to another inmate. According to the defendants, Jordan violated prison rules by keeping the belongings of another inmate in his cell. The defendants claim that inmates are required to demonstrate a right to possess excess property in their cells by offering evidence to support that right and Jordan has not established that he was entitled to keep the excess property in his cell. It is for this reason, they contend, the radio was not returned.

For these reasons, the defendants moved to dismiss the complaint on April 19, 1999. Jordan opposed this motion. Jordan also moved to amend his complaint in order to assert his claims against two additional defendants. Jordan further asked this court compel the defendants to respond to the numerous discovery requests which he had served upon them. Because the parties attached materials outside of the pleadings to their papers, the court treated the motion to dismiss as one for summary judgment. *See* Fed. R.Civ.P. 12(b) (2000).

On August 28, 2000, the court granted the motion in part. *See Jordan*, 2000 WL 1239956, at *1. In particular, the court dismissed Jordan's claims that the seizure of his legal materials denied him access to the courts and that his constitutional right of due process was violated by the confiscation of his personal property. *See id.* at *3–5. The court also granted Jordan's motion to amend in part. *Id.* at *6–8. Specifically, Jordan was allowed to assert his conversion claim against the correctional officer who presided over the disciplinary hearing. However, given the ambiguity surrounding his unreasonable search and seizure claim, the court required Jordan to provide greater specificity on these factual allegations. Jordan was also instructed to identify the specific declaratory, monetary, and injunctive relief which he sought. Finally, the court required the defendants to respond to some of Jordan's outstanding discovery requests. *See id.* at *8.

Jordan has not yet provided the additional clarification concerning his allegations that the court requested. Instead, he has moved for summary judgment on all of his claims. The court's prior dispositive ruling renders a large portion of this motion moot. *See Jordan*, 2000 WL 1239956, at *3–5 (dismissing Jordan's claims alleging a denial of access to the courts and a denial of due process). Furthermore, there are genuine issues of material fact concerning the events which transpired during the search of Jordan's cell and person. As a result, the court is unable to enter judgment in favor of Jordan as a matter of law. For these reasons, his motion will be denied. In addition, the court will require Jordan to file a revised complaint which clarifies his factual allegations concerning the search of his cell and person. A failure to do so may result in the dismissal of his complaint. Finally, while the defendants will be required to provide Jordan with the limited discovery that the court has ordered, they may do so after Jordan has filed his amended complaint.

## III. STANDARD OF REVIEW.

The court can grant summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c) (2000). An issue is "genuine" if, given the evidence, a reasonable jury could return a verdict in favor of the non-moving party. *See, e.g., Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Lloyd v. Jefferson*, 53 F.Supp.2d 643, 654 (D.Del.1999) (citing same). A fact is "material" if it bears on an essential element of the plaintiff's claim. *See, e.g., Abraham*, 183 F.3d at 287; *Lloyd*, 53 F.Supp.2d at 654. On summary judgment, the court cannot weigh the evi-

dence or make credibility determinations. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict ."); *International Union, United Auto., Aerospace & Ag. Implement Workers of America, U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 137 (3d Cir.1999) ("At the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact finder."). Instead, the court can only determine whether there is a genuine issue for trial. *See Abraham*, 183 F.3d at 287. In doing so, the court must look at the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all reasonable doubts in favor of that party—here, the defendants. *See, e.g., Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999). With these standards in mind, the court turns to a discussion of the most relevant facts giving rise to this lawsuit.

## IV. DISCUSSION.

In order to recover against the defendants, Jordan must show that he was deprived of a constitutional right by a person acting under the color of state law. *See* 42 U.S.C. § 1983 (1994). Here, there is no dispute that the defendants were acting under the color of state law because, at the time of the occurrence of the alleged conduct, they were correctional officers at the institution where Jordan was incarcerated. *See Cespedes v. Coughlin*, 956 F.Supp. 454, 465 (S.D.N.Y.1997) (noting that it was "undisputed that [the] defendants ... acted pursuant to their authority as prison officials under color of New York state law"); *cf. Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996) ("The defendants were 'acting under color of state law' in that they were performing the 'traditional state function' of operating a prison."). Thus, the only questions raised by

Jordan's dispositive motion are whether the defendants violated any of his constitutional rights by subjecting him to an unreasonable search and whether the defendants are liable for the tort of conversion.

### A. Jordan's Unreasonable Search Claim.

According to Jordan, the excessive or unreasonable manner by which the defendants conducted their search violated his constitutional rights. In particular, Jordan contends that when the guards burst into his cell, they ordered him off the toilet and placed him in handcuffs. They then brought him to a common area where he was strip searched. According to Jordan, one of the officers conducted an anal cavity search. Jordan, however, has not provided any greater detail concerning these events.

■ For security reasons, prison inmates do not retain a constitutionally-protected right of privacy in their prison cells, which can be searched at random at any time. *See Hudson v. Palmer*, 468 U.S. 517, 525–26, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). The Supreme Court has also noted that "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented...." *See Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, inmates also possess limited privacy rights concerning their persons.

■ Nevertheless, as the *Bell* Court emphasized, searches of prison inmates or

their cells "must [still] be conducted in a reasonable manner." 441 U.S. at 560, 99 S.Ct. 1861. In *Bell,* the Court ultimately concluded that a visual body cavity search of an inmate could be conducted on less than probable cause due to the legitimate security concerns of the institution. *Id.* However, as the Tenth Circuit has gone on to hold, the government must generally have a legitimate need or reason for conducting the search and must demonstrate that a less intrusive measure would not satisfy that need. *See Levoy v. Mills,* 788 F.2d 1437, 1439 (10th Cir.1986) (citing *United States v. Lilly,* 576 F.2d 1240, 1246 (5th Cir.1978)).

■ In its prior ruling, this court explained that,

> [i]n this case, it is not clear whether a visual or physical inspection was conducted. Furthermore, it is not clear what cause the prison guards had to conduct their search in the first place. Because the record on these issues has not yet been developed, the court cannot rule [as a matter of law] on this claim at this stage of the litigation.

*See Jordan,* 2000 WL 1239956, at *6 (citing *Levoy,* 788 F.2d at 1439).

The court is still unable to rule on Jordan's claim of unreasonable search and seizure. As mentioned earlier, although the court has asked Jordan to clarify his factual allegations concerning the search of his cell and his person, he has yet to do so. As a result, it is remains unclear what need the defendants had to conduct their search of Jordan's person. It also not clear how intrusive their search was. Therefore, the court cannot enter judgment as a matter of law in favor of Jordan at this time. *See, e.g., Taylor v. Barwick,* 1997 WL 527970, at *2 (Del.Super.Ct. Jan.10, 1997) (denying the plaintiff's motion for summary judgment because, when the record was viewed in the light most favorable to the defendants, a reasonable jury could find in their favor).

## B. Jordan's Conversion Claim.

Jordan also contends that the defendants committed the tort of conversion by intentionally interfering with his right to possess his personal property. Specifically, Jordan claims that the defendants seized numerous items during their search of his cell and have since refused to return these items to him.

■ Under Delaware law, the tort of conversion is defined as the "wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it." *See Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.,* 42 F.Supp.2d 423, 439 (D.Del.1999) (quoting *Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.,* 1995 WL 694397, at *16 (Del.Ch.Ct. Nov. 21, 1995)); *see also Baram v. Farugia,* 606 F.2d 42, 43–44 (3d Cir.1979) (explaining that, under Pennsylvania law, conversion is defined as "an act of willful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession.").

■ With respect to this claim, the key issue is whether the defendants *wrongfully* exercised dominion or control over Jordan's property. Given the record, it is not clear whether the defendants acted wrongfully in this regard. When the record is viewed in the light most favorable to them, a reasonable jury could conclude that Jordan was in possession of excess property. Given this apparent violation of prison regulations, it would appear that the materials were properly seized. As a result, the court cannot enter judgment as a matter of law in favor of Jordan at this stage of the proceedings. Therefore, his motion for summary judgment on his claim of conversion will be denied.

## C. Jordan's Revised Complaint.

Although Jordan was granted leave to file an amended complaint, he has yet to do so. As a result, the factual basis for his

unreasonable search and seizure claim as well as the specific monetary and injunctive relief which Jordan seeks remain unclear. This lack of clarity has prevented the court from ruling on Jordan's claims as a matter of law. It has also prevented the defendants from answering or otherwise filing a response to Jordan's allegations. Therefore, the court will afford Jordan an additional twenty days to file an amended pleading which plainly sets forth the basis for (1) his unreasonable search and seizure claim against the three correctional officers who searched his cell and his person, (2) his conversion claim against these three defendants and the correctional officer who presided over Jordan's disciplinary hearing, and (3) the specific declaratory, monetary, and injunctive relief that he is seeking in this action. *See Jordan*, 2000 WL 1239956, at *8 (citing Fed.R.Civ.P. 8(a) (2000)). If Jordan fails to file an amended complaint within this time frame, he may be sanctioned. *See, e.g., Owens v. Ryan*, Civ. A. No. 98–413–GMS, slip op. at 2–3 (D.Del. Sep.12, 2000) (explaining that dismissal of the complaint is appropriate where the plaintiff acts in "flagrant bad faith" or with "callous disregard" of the court's orders, thus evincing an unwillingness on his behalf to prosecute his case) (citing D.Del.L.R. 4.1 (1995); *Harris v. City of Philadelphia*, 47 F.3d 1311, 1330 n. 18 (3d Cir.1995)); *see also Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir.1984). The court will afford the defendants thirty days to answer or otherwise respond to Jordan's revised pleading.

#### D. The Defendants' Discovery Responses.

Finally, the court will extend the deadline for the defendants to respond to Jordan's discovery requests. In particular, the defendants will now be allowed to filed their responses to limited the interrogatories and document requests that were the subject of the court's previous ruling within thirty days after Jordan files his revised complaint.

## V. CONCLUSION.

The court has already addressed two of Jordan's claims in a previous ruling. Therefore, the first portion of his motion for summary judgment will be denied as moot. Jordan has also failed to clarify his factual allegations concerning the search of his person and his cell. As a result, the court has been prevented from ruling as a matter of law on this claim. Furthermore, because there are genuine issues of material fact surrounding the seizure of Jordan's personal property, the court cannot enter judgment as a matter of law in his favor on his claim of conversion. For these reasons, the remainder of Jordan's motion for summary judgment will also be denied. Finally, the court will remind Jordan of his obligation to file a revised pleading which clarifies his factual allegations concerning his search and seizure claim. Once this revised pleading has been submitted, the defendants must comply with their outstanding discovery obligations. The court will issue an order to this effect in conjunction with this opinion.