976 F.2d 737
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John C. McGINTY, Plaintiff-Appellant,
v.
Richard RUE, M.D.; Margaret Wall, Health Service Manager,
Oregon State Penitentiary; Manfred Maass, Superintendent;
Steven M. Gassner, Assistant Superintendent, Oregon State
Penitentiary, Defendants-Appellees.
 No. 90-35532.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 2, 1992.*
Decided Sept. 24, 1992.
 
 Before CYNTHIA HOLCOMB HALL, O'SCANNLAIN and LEAVY, Circuit Judges.
 
 ORDER
 
 1
 The memorandum disposition filed May 29, 1992, is hereby withdrawn and the attached memorandum disposition shall be filed. With the memorandum disposition, the panel has voted to deny appellant's petition for rehearing and to reject the suggestion for rehearing en banc.
 
 
 2
 The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.
 
 
 3
 The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.
 
 
 4
 MEMORANDUM**
 
 
 5
 John C. McGinty, a former state prisoner, appeals pro se the district court's judgment for defendant officials of the Oregon State Penitentiary (OSP) and the Oregon State Board of Parole ("the Board") in this action under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986. We dismiss his appeal of the district court's order awarding attorney's fees to Defendants for lack of jurisdiction. As to McGinty's appeal on the merits, we affirm in part and reverse and remand in part.
 
 
 6
 * The Eleventh Amendment bars McGinty from gaining retroactive money damages in federal court against state officials acting in their official capacity. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 121 (1984) (Pennhurst II ). Moreover, state officials acting in their official capacities are not "persons" for purposes of 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). They are, instead, synonymous with the state itself. Id. Thus, the district court properly dismissed these claims.
 
 
 7
 McGinty's claims against the officers in their individual capacities are not barred by the Eleventh Amendment if they are grounded upon violations of his federal constitutional rights. "[A]n official who acts unconstitutionally is 'stripped of his official or representative character' " for purposes of the Eleventh Amendment. Pennhurst II, 465 U.S. at 104 (quoting Ex parte Young, 209 U.S. 123, 160 (1908)).
 
 II
 
 8
 * The first constitutional violation alleged by McGinty is a violation of due process arising from Defendants' miscalculation of his parole date. To the extent that this claim seeks relief based upon a violation of state law, the Eleventh Amendment bars McGinty from pursuing it in federal court: "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." Pennhurst II, 465 U.S. at 106, 121. The district court correctly held that any claim directly seeking relief for Defendants' misapplication of state law is barred by the Eleventh Amendment.
 
 B
 
 9
 McGinty's claims for federal constitutional violations arising out of the Board's determination of his release date are almost certainly blocked by the absolute immunity afforded to the quasi-judicial actions of such boards. Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir.), cert. denied, 454 U.S. 1102 (1981); cf. Board of Pardons v. Allen, 482 U.S. 369, 371 n. 1 (1987) (Court has not yet decided whether parole officials are entitled to absolute immunity).
 
 
 10
 Even assuming that some of the non-Parole Board officials named by McGinty as Defendants were not shielded by absolute immunity, McGinty's claims have no basis in fact. First, he argues that Defendants erroneously added six months to his prison sentence based upon his driving while suspended (DWS) convictions because DWS convictions are not crimes. His reliance on State v. Hale, 722 P.2d 1269, 1270 (Or.App.1986), for the proposition that "[t]here is no criminal objective involved in this case" is misplaced. That language was part of the court's analysis of whether the Oregon legislature intended to permit sentencing on both DWS and DUII based upon a single incident of conduct and therefore does nothing to support McGinty's claim that DWS "is not a criminal act." DWS is a strict liability criminal offense in Oregon. State v. Buttrey, 651 P.2d 1075, 1083 (Or.1982).
 
 
 11
 McGinty also argues that the Parole Board acquiesced to a Caucasian inmate's similar argument that DWS offenses are not "criminal acts" for purposes of parole calculations. The only evidence supporting this allegation offered by McGinty is his own declaration that
 
 
 12
 I know that a white inmate Ray Stellgis [sic] raised in October of 1986, prior to my release hearing in February, 1987, the issue that felony driving while suspended was a strict liability offense and was not to be treated as a felony based upon criminal acts, i.e. acts with criminal intent. I have reviewed Mr. Stellgis's Oregon Board of Parole Board Action Forms as well as his briefs ...
 
 
 13
 In his brief, McGinty cites to some decisions of Oregon courts relating to the case of Stelljes, but these decisions contain no discussion of the merits of Stelljes's claim. See, e.g., Stelljes v. State Bd. of Parole, 769 P.2d 177 (Or.1989). McGinty has not proffered sufficient evidence to survive summary judgment on this issue. He is not testifying from personal knowledge, but only offering hearsay about the Stelljes case and repeating information allegedly contained in court documents relating to Stelljes's case. Under the best evidence rule, he should have offered the documents as proof of his claim. See Fed.R.Evid. 1002. We see no admissible evidence showing disparate treatment sufficient to survive summary judgment.
 
 
 14
 McGinty's second claim relating to calculation of his prison term is that he was never given credit for 70 days served as required by Oregon law. The record before us shows, however, that he was in fact given credit for those 70 days when he was imprisoned for violating his probation on the driving offenses (case numbers 80-1957 and 81-1043). His complaint is apparently that he was not also given credit for those same 70 days when he was imprisoned for violating his probation on the assault charge. His argument lacks any basis in fact.
 
 
 15
 Finally, McGinty argues in his PFR that he was forced to serve his sentences consecutively rather than concurrently. We understand McGinty's allegations to be that the length of his parole on the driving charges was incorrectly extended by the amount of time he was imprisoned on the assault charge. Even assuming this argument to be correct, McGinty suffered no injury because his parole on the driving charges was actually terminated earlier than legally necessary. McGinty's five-year term on the two driving charges would have expired on May 9, 1990, if he had actually been imprisoned for the full five years. McGinty was actually released from parole on October 7, 1988. McGinty has therefore suffered no damage because he was actually released earlier than legally necessary.
 
 III
 
 16
 McGinty alleges that a variety of mistreatments were visited upon him by OSP staff. The district court correctly interpreted his complaint to allege, first, that these mistreatments were themselves federal constitutional violations and, second, that they were means by which OSP officials denied him access to the prison law library and, thereby, deprived him of meaningful access to the courts. The district court granted summary judgment against McGinty on all of these claims as independent constitutional violations, but held a bench trial on whether the alleged mistreatment denied McGinty meaningful access to the courts. We first consider whether any of the mistreatments alleged by McGinty state a constitutional violation independent of his meaningful access claim.
 
 
 17
 * 1
 
 
 18
 McGinty makes two claims based upon his assignment to kitchen duty. First, he argues that he was subjected to involuntary servitude in violation of the Thirteenth Amendment. This claim is utterly without merit because "[t]here is no federally protected right of a state prisoner not to work while imprisoned after conviction." Draper v. Rhay, 315 F.2d 193, 197 (9th Cir.), cert. denied, 357 U.S. 915 (1963). "The Thirteenth Amendment does not prohibit involuntary servitude as part of imprisonment for a crime." Piatt v. MacDougall, 773 F.2d 1032, 1035 (9th Cir.1985) (en banc).
 
 2
 
 19
 Second, McGinty alleged that he was required to work even though he was under doctor's orders to convalesce in his cell. So far as we can tell, the district court never ruled on this claim even though it is clearly pleaded in McGinty's amended complaint. McGinty's complaint on its face states two distinct, but overlapping, Eighth Amendment claims. First, McGinty could be stating that OSP officials "intentionally interfer[ed] with the treatment once prescribed" for him, thereby engaging in deliberate indifference to a serious medical condition. Estelle v. Gamble, 429 U.S. 97, 105 (1976). Second, McGinty could also state a claim that prison officials inflicted pain upon him "maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995, 999 (1992).
 
 
 20
 The standard for deliberate indifference to a medical condition is high "[b]ecause society does not expect that prisoners will have unqualified access to health care." Id. at 1000. In Wood v. Housewright, 900 F.2d 1332 (9th Cir.1990), for example, a prisoner complained that prison officials seized his arm sling because they thought it to be a security risk. He required the sling because a surgically-inserted pin in his shoulder had snapped and was causing him pain. Although prison officials were possibly grossly negligent in failing to procure his medical records to confirm his medical condition, their behavior did not amount to deliberate indifference. Id. at 1334. A prisoner must demonstrate substantial harm to state an Eighth Amendment medical violation. Id. at 1335. Since the prisoner's condition in Wood did not require emergency attention, this court held that no such harm was shown. Id.
 
 
 21
 As to McGinty's claim for the malicious and sadistic infliction of pain, he need not demonstrate substantial harm to show a violation premised on the malicious infliction of pain:
 
 
 22
 When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.
 
 
 23
 Hudson, 112 S.Ct. at 1000 (citations omitted). "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." Id. A malicious use of force must be "repugnant to the conscience of mankind" to be actionable. Id. (internal quotation omitted).
 
 
 24
 McGinty's allegation that he was forced to work in violation of medical orders and that the work caused him to suffer pain may state an Eight Amendment violation under either Estelle or Hudson. The record before us is voluminous, but McGinty has directed our attention to two documents that at least arguably support his claim. The first is a copy of McGinty's prison medical record. Plaintiff's Exhibit 71.[1] The record contains a progress note entered by Dr. Strauss on September 3, 1987. The progress note indicates that McGinty complained of "bothersome hemorrhoids" and that the doctor's examination resulted in a diagnosis of minor hemorrhoids. Id. at 5. The doctor concluded that McGinty "should have convalescence from his job for one week." Id.
 
 
 25
 The second document is a copy of McGinty's "Group Living Card," which appears to be a comprehensive history of McGinty's housing and work assignments within the prison. Attachment 2 to Defendants' Exhibit 102 (attached to Defendants' Motion for Partial Summary Judgment, CR 101). This card appears to show that McGinty was assigned to dining room duty effective September 2, 1987, the day before his medical exam. No further changes in his work assignment are indicated until September 29, 1987.
 
 
 26
 It thus appears that McGinty has proffered some evidence, in addition to his own testimony, supporting his claim that he was forced to work in violation of his doctor's orders. We therefore remand for trial on this issue.
 
 B
 
 27
 McGinty argues that his transfer to satellite facilities and to administrative segregation denied him due process of law. McGinty has no due process claim whatsoever based upon his transfer from one prison to another:
 
 
 28
 [T]he Due Process Clause [does not] in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system.... That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.
 
 
 29
 Meachum v. Fano, 427 U.S. 215, 225 (1976).
 
 
 30
 A prisoner can, however, have a liberty interest in remaining within the general prison population and not being placed in segregation. Hewitt v. Helms, 459 U.S. 460, 470-71 (1983); Hughes v. Rowe, 449 U.S. 5, 11 (1980) (per curiam). Hughes held that, absent emergency circumstances, segregation of a prisoner for disciplinary purposes may require a hearing to satisfy due process. Hughes, 449 U.S. at 11-12. In Hewitt, the Court appears to have distinguished Hughes by holding that "administrative segregation" for nonpunitive reasons does not implicate due process concerns. Hewitt, 459 U.S. at 468. The Court in Hewitt nonetheless found a due process liberty interest based upon the mandatory language of state prison regulations. Id. at 469-72.
 
 
 31
 In the case at hand, therefore, McGinty would first have to prove a liberty interest in remaining outside of administrative segregation by virtue of state statutes or regulations phrased in an appropriately mandatory way. The State of Oregon has previously conceded that "a transfer to segregation[,] whether labelled administrative or disciplinary, is so similar that [prisoners] are entitled to the same due process in either case." Bartholomew v. Watson, 665 F.2d 915, 916-17 (9th Cir.1982). We therefore assume that Oregon had created a liberty interest in McGinty remaining outside of segregation. The district court erred by citing to Hewitt and reasoning that McGinty deserved no hearing because he was placed in segregation for nonpunitive reasons.
 
 
 32
 The district court nonetheless correctly identified the limited process due to McGinty in this situation: "An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Hewitt, 459 U.S. at 476. Defendants essentially admit that McGinty was not provided with a hearing. Thus, it appears that McGinty has created a genuine issue of material fact as to whether Defendants violated his due process rights by placing him in segregation without a hearing. Accordingly, the district court should try this issue.
 
 C
 
 33
 McGinty alleged that the prison denied him contact visits. The Due Process Clause does not guarantee unfettered visitation. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Any liberty interest in visitation arises out of mandatorily-phrased state regulations. Id. at 461. The district court held that the "Oregon Administrative Rules governing prison visits are not sufficient to create a property or liberty interest." Our reading of Oregon Administrative Rule 291-127-020(1) is, however, to the contrary. That rule provides that "[a]n application for Basic Visiting shall be approved unless there are reasonable grounds to believe that such visitation would jeopardize the safety" of persons within the prison. Or.Admin.R. 291-127-020(1), reprinted in Response to PFR, Appendix E, at E-7 (emphasis added). Thus, McGinty has shown that he had a liberty interest in receiving visitors by virtue of mandatorily-phrased regulations.
 
 
 34
 In the Petition for Rehearing and the corresponding Response, the parties argue over whether McGinty refused to supply a replacement list of visitors for approval when the list was lost by the prison. Because this appears to boil down to a genuine issue of material fact, we hold that the district court should try this issue.
 
 D
 
 35
 The district court correctly held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). McGinty's complaint merely alleges that the employee who allegedly stole his papers was not disciplined and his brief on appeal does not cure that pleading defect. The district court acted properly by granting summary judgment for Defendants on this claim.
 
 E
 
 36
 McGinty next argues that the district court denied him due process by granting summary judgment against him sua sponte. The district court granted summary judgment sua sponte only as to McGinty's suit to force OSP officials to provide him with eyeglasses. All of the issues except for the eyeglasses claim were decided on Defendants' motion for summary judgment, not sua sponte, --so McGinty's argument is without factual foundation for all but the eyeglasses claim.
 
 
 37
 As to the eyeglasses claim, McGinty had ample opportunity to "ventilate" the issues before a magistrate and another district judge. Both the magistrate and the district judge had issued rulings on the matter. See Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311-12 (9th Cir.1982) (court may grant summary judgment sua sponte if "party against whom summary judgment was rendered had a full and fair opportunity to ventilate the issues involved in the motion"). Although appellate courts do not look with favor upon sua sponte grants of summary judgment, id., the issue here is akin to a reconsideration of an earlier motion because the issue was fully litigated before another judge. A district court may reconsider its ruling on a motion for summary judgment at any time before final judgment is entered. United States v. Desert Gold Mining Co., 433 F.2d 713, 715 (9th Cir.1970). The district court did not err.
 
 IV
 
 38
 McGinty argues that OSP officials used various means to prevent him from using the prison law library and that he was thereby denied meaningful access to the courts. The district court denied Defendants' motion for summary judgment on the ground that a single genuine issue of material fact existed: whether McGinty was apprised of "emergency library turnout" procedures. After a bench trial,[2] the district court concluded that McGinty had not been denied meaningful access.
 
 
 39
 A prisoner is denied meaningful access to the courts through a denial of access to a law library only if he can prove a specific instance in which he was actually denied access to the courts. Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989). McGinty points to two of his cases he claims were dismissed due to his lack of access to a law library. The district court found as a matter of fact, however, that one case was dismissed voluntarily and the other for lack of prosecution. Given McGinty's statements in the record to the effect that these dismissals were, at least in part, attributable to the press of litigation in his other cases, the district court's finding does not appear to be clearly erroneous. Without a showing of prejudice, McGinty's claim therefore fails.
 
 
 40
 Moreover, the district court found that McGinty in fact spent a significant amount of time in the library and had access to it even when he was in administrative segregation and incarcerated at satellite facilities. "[P]laintiff received adequate library time to pursue his claims, with or without the loss of his papers." Finally, the district court stated that "I cannot find that any of the defendants engaged in any of these activities in an effort to prevent plaintiff from using the library." McGinty has not provided us with any basis to conclude that the district court's factual findings were clearly erroneous, and those findings negate any claim for denial of access to the courts under Sands.
 
 V
 
 41
 The district court awarded attorney's fees to Defendants under 42 U.S.C. § 1988, finding that McGinty's lawsuit was frivolous. Defendants correctly point out that McGinty's failure to file a notice of appeal from the attorney's fee order deprives this court of jurisdiction. Farley v. Henderson, 883 F.2d 709, 712 (9th Cir.1989); cf. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200-01 (1988) ("[A] claim for attorney's fees is not part of the merits of the action to which the fees pertain" and a notice of appeal as to an attorney's fee order does not serve as a notice of appeal as to the judgment on the merits.). McGinty admits that he did not file a notice of appeal as to the award of attorney's fees, and therefore cannot prosecute this appeal.
 
 VI
 
 42
 The judgment of the district court on the merits is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. McGinty's appeal of the district court's fee order is DISMISSED for lack of jurisdiction. The district court is instructed to try the following issues: (1) whether McGinty was subjected to cruel and unusual punishment by being forced to work in violation of doctor's orders; (2) whether McGinty was placed in segregation without a hearing in violation of Oregon regulations; and (3) whether McGinty was denied visitation in violation of Oregon regulations.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34.4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We are unable to read the evidence tag from the photocopy of this document. McGinty, however, cites it as exhibit 71(5) and the number 71 appears in the upper right hand corner of each page. We therefore assume that this document was in fact identified below as Plaintiff's Exhibit 71. We attach a copy to this memorandum
 
 
 [2]
 McGinty complains that his attorneys waived jury trial without his authorization. However, "knowing participation in a bench trial without objection constitutes waiver of a timely jury demand." White v. McGinnis, 903 F.2d 699, 700 (9th Cir.) (en banc), cert. denied, 111 S.Ct. 266 (1990). Here, McGinty's attorneys did not merely participate without objection in the bench trial, but expressly agreed to it beforehand. Moreover, in White the plaintiff was represented by counsel. Id. at 700 n. 1. Thus, there is no requirement that a civil litigant personally waive a timely jury demand