886 F.2d 1166
 Royce Calvin SANDS, II, Petitioner-Appellant,
v.
Sam LEWIS, Director, ADOC; John McFarland, Assistant at
ADOC; B.D. Goldsmith, Deputy Warden of the Central Unit;
Major Terry, Head of Security at the Central Unit; Sgt.
Beigenwald, Head of Security at the Central Unit; Jim
Adams, Assistant Warden of Central Unit, Respondents-Appellees.
 No. 87-2629.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 11, 1989*.
Decided Sept. 29, 1989.
 
 Royce Sands, pro se, Tucson, Ariz., for petitioner-appellant.
 Thomas Prose, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before WALLACE and NOONAN, Circuit Judges, and ZILLY,** District Judge.
 ORDER
 The opinion filed in this case on July 3, 1989, is withdrawn.
 OPINION
 WALLACE, Circuit Judge:
 
 
 1
 Sands appeals from the district court's dismissal, for failure to state a claim, of his action brought under 42 U.S.C. Sec. 1983. The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1343(a)(3). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291. We affirm in part, reverse in part, and remand.
 
 
 2
 * Sands, an incarcerated state prisoner appearing pro se, filed a complaint against defendants Lewis and other prison officials (prison officials), and subsequently filed an amended complaint. The amended complaint alleged that Sands's constitutional rights to free speech and due process (right of access to courts) were violated when prison officials (1) refused to allow him to take possession of a new typewriter with a certain correction memory capability that had been mailed to him by his mother, and (2) prohibited him from purchasing, or possessing in his cell, carbon paper because it was a fire hazard. Sands attributed the denial of his typewriter to a prison policy prohibiting prisoners from possessing typewriters with memory capability of over 28 characters; Sands's typewriter had a capability of 40 characters. Notably, Sands's complaint did not allege deprivation of property without due process of law or violation of equal protection of the laws. On appeal, Sands argues that his complaint does state a claim for denial of his right of access to courts and for abridgement of his free speech rights. We address these arguments in turn.
 
 
 3
 We review independently a dismissal for failure to state a claim for which relief could be granted. Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1152 (9th Cir.1989). We must accept Sands's material allegations in the complaint as true and construe them in the light most favorable to him. Id. "We may affirm the district court's dismissal 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " Id., quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Moreover, a pro se litigant such as Sands "must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.' " Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 623 (9th Cir.1988) (Karim-Panahi ), quoting Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir.1987) (Noll ).
 
 II
 
 4
 Sands's first claim is that the prison's policies and actions deprived him of his constitutional right of access to the courts. He points to (1) the prison's policy against allowing inmates to possess typewriters above a certain memory capability in their cells, and (2) the unavailability of carbon paper as well as the prohibition against inmates keeping carbon paper in their cells.
 
 
 5
 In Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (Bounds ), the Supreme Court described the contours of the constitutional right of access to the courts. This right of access is grounded in the fourteenth amendment's due process clause. See Vigliotto v. Terry, 865 F.2d 1131, 1132-33 (9th Cir.1989). In Bounds, the Court surveyed its decisions in this area, observing that its most recent cases had "struck down restrictions and required remedial measures to insure that inmate access to the courts is adequate, effective, and meaningful." 430 U.S. at 822, 97 S.Ct. at 1495 (emphasis added); see also Franklin v. Murphy, 745 F.2d 1221, 1231-32 (9th Cir.1984) (Franklin ); Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir.1981). The Court observed that states have an affirmative obligation to ensure indigent prisoners' "meaningful" access to court:
 
 
 6
 It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. States must forgo collection of docket fees otherwise payable to the treasury and expend funds for transcripts.... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial.
 
 
 7
 Bounds, 430 U.S. at 824-25, 97 S.Ct. at 1496 (emphasis added). Finally, the Court in Bounds concluded that to guarantee the right of access, prison authorities must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828, 97 S.Ct. at 1498 (footnote omitted).
 
 
 8
 Since Bounds, prisoner suits alleging a denial of access to courts have become commonplace in this circuit. Most of our cases have dealt with Bounds 's core requirements that prison officials provide "adequate law libraries or adequate assistance from persons trained in the law." Id. Fewer of our cases have considered claims based on Bounds 's teaching that the State must provide "indigent" prisoners with basic supplies which ensure that their access is "meaningful." See id. at 824-25, 97 S.Ct. at 1496-97. In evaluating this latter type of claim, we have declined to read into the Constitution any specific minimum requirements beyond those mentioned in Bounds itself. See King v. Atiyeh, 814 F.2d 565, 568 (9th Cir.1987) (citing Bounds for proposition that state must provide indigent inmates with postage stamps at state expense to mail legal documents). In King, we stated: "There is no established minimum requirement that a state must meet in order to provide indigent inmates with adequate access to the courts. Instead, a reviewing court should focus on whether the individual plaintiff before it has been denied meaningful access." Id. In other cases, we have stressed this individualized focus on whether a particular prisoner had meaningful access. See Lindquist v. Idaho State Board of Corrections, 776 F.2d 851 (9th Cir.1985) (Lindquist ); Franklin, 745 F.2d at 1231-32.
 
 
 9
 Despite this individualized focus, we have not hesitated to reject constitutional claims of entitlement to resources which no prisoner could possibly require to have "meaningful" access. For example, we have held that prisoners have no constitutional right to the use of a typewriter. Lindquist, 776 F.2d at 858. In like manner, numerous courts have rejected any constitutional right to free and unlimited photocopying. See Jones v. Franzen, 697 F.2d 801, 803 (7th Cir.1983) (Franzen ) ("[B]road as the constitutional concept of liberty is, it does not include the right to xerox."); see also Wanninger v. Davenport, 697 F.2d 992, 994 (11th Cir.1983) (Wanninger ); Johnson v. Parke, 642 F.2d 377, 380 (10th Cir.1981); Harrell v. Keohane, 621 F.2d 1059, 1060-61 (10th Cir.1980).
 
 
 10
 This circuit's decisions have reflected our belief that the Constitution requires that certain minimum standards be met; it does not require the maximum or even the optimal level of access. See Lindquist, 776 F.2d at 856 (if prison decides to provide adequate law library as option under Bounds, it "need not provide its inmates with a library that results in the best possible access to the courts. Rather, the Prison must provide its inmates with a library that meets minimum constitutional standards.") (citation omitted); id. at 858 ("[T]he Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used."). In other words, the Constitution does not require the elimination of all economic, intellectual, and technological barriers to litigation. Cf. Hoptowit v. Ray, 682 F.2d 1237, 1246-47 (9th Cir.1982) (eighth amendment claims).
 
 
 11
 The Third Circuit has employed a useful framework for analyzing "right of access" claims which reflects these concerns and is in harmony with our case law. See Peterkin v. Jeffes, 855 F.2d 1021, 1039-42 (3d Cir.1988) (Peterkin ); Hudson v. Robinson, 678 F.2d 462, 466 (3d Cir.1982) (Hudson ); Kershner v. Mazurkiewicz, 670 F.2d 440, 442, 444-45 (3d Cir.1982) (en banc) (Kershner ). In Kershner, Judge Adams, writing for the full court, had this to say about the prisoner's claim that under Bounds prison authorities were required to provide indigent inmates with free legal supplies, including pads, pens, pencils and photocopying:
 
 
 12
 Appellants rely heavily on Bounds v. Smith. In the very first sentence in Bounds, however, the majority stated its perception of the primary issue before the Court as follows: "The issue in this case is whether States must protect the right of prisoners to access to the courts by providing them with law libraries or alternative sources of legal knowledge." Pads, pens, pencils, and photocopy machines are, of course, neither "law libraries" nor "alternative sources of legal knowledge." In a lengthy discourse on somewhat collateral issues, however, the Court said: "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." Whether the latter statement was dictum or a holding is irrelevant for our purposes because the touchstone was the word "indigent," though the Court proffered no definition of indigency.
 
 
 13
 Magistrate Durkin's report suggests that the plaintiffs may not have been "indigent" for the purpose of purchasing the modest supplies at issue here. Further, and more important, the Magistrate stressed that there was no proof adduced that "any prisoner has not been able to perfect and pursue a legal action due to the written policy concerning postage and the policy regarding paper and writing utensils...."
 
 
 14
 670 F.2d at 444 (citations omitted) (emphasis in original); see also id. at 442. For this reason, the court concluded that "at this stage in the litigation [appeal from denial of a preliminary injunction] there has been no showing that this proceeding involves 'access to courts.' " Id. at 444 (footnote omitted).
 
 
 15
 In Hudson, the Third Circuit addressed a prisoner's claim that prison policies violated his right of access by requiring him to wait ten days to have a document notarized. 678 F.2d at 466. After observing that, as in Kershner, the claim did not involve the adequacy of prison libraries or assistance from person trained in law, the court stated:
 
 
 16
 It is possible that a combination of several factors might, taken together, lead to a finding that a prisoner has been denied access to the courts where no one of the factors, taken alone, would do so. However, it must first be shown that the proceeding involves access to the courts, Kershner, 670 F.2d at 444, and that some actual injury, that is "an instance in which an inmate was actually denied access to the courts," id., has occurred. That burden has not been met here. The only "injury" suffered by plaintiff was his being required on one occasion to wait ten days to have a document notarized. As a result, he submitted the document later than he would have liked but prior to the date it was due. This does not satisfy the actual injury requirement.
 
 
 17
 678 F.2d at 466; see also Peterkin, 855 F.2d at 1039-42 (describing requirement of "actual injury" in cases which do not involve alleged inadequacy of "law libraries or alternative sources of legal knowledge"). In Peterkin, the Third Circuit explained the rationale for this actual injury requirement as follows:
 
 
 18
 In Kershner and Hudson, we applied an actual injury requirement as a consequence of our view that not every item or feature capable of being linked to a state's provision of legal assistance to prisoners automatically implicates the constitutional right of access to the courts. Some ancillary features, such as the scheduling of available notary services, see Hudson, 678 F.2d at 466, may affect merely comfort or convenience without depriving a prisoner of access to the courts. A court cannot make the assumption that any alleged administrative deficiency or less than optimal clerical arrangement actually impedes a prisoner's ability to file meaningful legal papers.
 
 
 19
 855 F.2d at 1041. The court in Peterkin concluded that "[i]n cases where a prisoner's claim relates to access to resources other than legal assistance itself, an actual injury [requirement] can be helpful in determining whether an unconstitutional abridgement of access to the courts has occurred." Id.
 
 
 20
 Numerous other circuits appear to have followed, implicitly or explicitly, the Third Circuit's approach. See Magee v. Waters, 810 F.2d 451, 452 (4th Cir.1987) (upholding summary judgment against prisoner because "[h]e advises us of no specific problem he wished to research and of no actual injury or specific harm which has resulted to him by his limited access to the jail library or its limited contents"); Mann v. Smith, 796 F.2d 79, 84 & n. 5 (5th Cir.1986); Cookish v. Cunningham, 787 F.2d 1, 5 (1st Cir.1986) (prisoner "did not allege any specific harm" resulting from temporary restrictions); Hoppins v. Wallace, 751 F.2d 1161, 1162 (11th Cir.1985) (prisoner "presented no evidence ... that any case was dismissed or that any sanction was imposed by the courts due to ... the [prison's] stamp policy"); Franzen, 697 F.2d at 803; Wanninger, 697 F.2d at 994 (upholding dismissal of action where prisoner, among other things, failed to allege that various restrictions "affected his ability to represent himself in the state evidentiary hearing at issue, thereby denying him effective access to the court"); see also Grady v. Wilken, 735 F.2d 303, 306 (8th Cir.1984). In addition, numerous district courts appear to have employed this framework. See, e.g., Artway v. Scheidemantel, 671 F.Supp. 330, 335 (D.N.J.1987); Hudson v. Johnson, 619 F.Supp. 1539, 1544 (E.D.Mich.1985); Esposito v. Leddy, 618 F.Supp. 1362, 1367 (N.D.Ill.1985); Kendrick v. Bland, 586 F.Supp. 1536, 1554 (W.D.Ky.1984).
 
 
 21
 We now explicitly adopt the Third Circuit's approach to "right of access" claims. Under that analysis, a court must first determine whether the right of access claimant alleges inadequate " 'law libraries or alternative sources of legal knowledge,' " Peterkin, 855 F.2d at 1041, quoting Kershner, 670 F.2d at 444, that is, whether the claimant alleges a denial of "adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828, 97 S.Ct. at 1498. Second, if the claims do not involve such an allegation, the court must consider whether the plaintiff has alleged an "actual injury" to court access. An "actual injury" consists of some specific " 'instance in which an inmate was actually denied access to the courts.' " Hudson, 678 F.2d at 466, quoting Kershner, 670 F.2d at 444. Only if an actual injury is alleged does a plaintiff state a claim for which relief can be granted. On the other hand, if one of the core requirements under Bounds is involved--the adequacy of either law libraries or legal assistance--then there is no "actual injury" requirement. See Peterkin, 855 F.2d at 1041-42 (where core Bounds requirement is at issue, "the analysis of whether an actual constitutional injury exists is simply the Bounds analysis") (footnote omitted).
 
 
 22
 We believe this approach is implicit in our prior case law. For example, in King, we reversed the dismissal for failure to state a claim of a complaint alleging denial of access caused by a state hospital's policy of limiting indigent inmates to three stamps per week. 814 F.2d at 568. The district court had dismissed the claim because plaintiffs "failed to allege that the state's policy actually interfered with their or any similarly situated individual's access to the courts." Id. (emphasis added). Implicitly accepting this standard, we reversed because the complaint, read liberally, did allege such actual injury. Id. Similarly, in Vigliotto, we recently rejected a prisoner's "right of access" claim based on the prison's deprivation of his legal materials for three days. We held that "[t]he temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation." 865 F.2d at 1133.
 
 
 23
 We now apply the foregoing principles to this case. At the outset we observe that Sands does not allege that he is being denied either an adequate law library or adequate assistance from persons with legal training. Instead, he challenges the deprivation of carbon paper and the prison's refusal to allow him to keep his memory typewriter in his cell. Under the foregoing test, Sands can only state a claim for denial of access if he points to or alleges a specific "actual injury." Sands does not. Although he does allege indigency, Sands fails to allege that the deprivation of carbon paper or his own memory typewriter prevented his access to courts. He fails to point to any specific instance in which he was actually denied access to the courts.
 
 
 24
 While the district court correctly concluded that Sands's right of access claim, as presently framed, fails to state a valid claim, it is not " 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.' " Karim-Panahi, 839 F.2d at 623, quoting Noll, 809 F.2d at 1448. We have stated that "when a court dismisses a pro se complaint for failure to state a claim, the court should draft a few sentences explaining to the plaintiff the deficiencies and allow the plaintiff to amend." Hernandez v. Denton, 861 F.2d 1421, 1423 (9th Cir.1988) (Hernandez ); see Karim-Panahi, 839 F.2d at 623-24. On remand, Sands may well be able to allege a specific "actual injury" sufficient to meet our new requirement. We therefore reverse the dismissal of Sands's right of access claim and remand for further proceedings consistent with this opinion.
 
 III
 
 25
 Sands also argues that the prison, by refusing to allow him to retain in his cell the electronic typewriter mailed to him by his mother, violated his free speech rights guaranteed by the first amendment.
 
 
 26
 Sands cites Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), for the proposition that any regulation or practice which restricts the right of free expression that a prisoner would have enjoyed, if he had not been imprisoned, must (1) "further an important or substantial governmental interest unrelated to the suppression of expression," and (2) be "no greater than is necessary or essential to the protection of the particular governmental interest involved." Id. at 413, 94 S.Ct. at 1811. Subsequent cases have demonstrated that the Martinez standard has more limited applicability than Sands suggests. See Thornburgh v. Abbott, --- U.S. ----, 109 S.Ct. 1874, 1878-79, 104 L.Ed.2d 459 (1989) (clarifying that Martinez did not lay down a "least restrictive means" test and discussing applicability of various standards for reviewing claims of impingement upon prisoners' first amendment rights); Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (articulating "reasonable relation" test). Martinez, Abbott, and Safley all involved censorship--prison rules which directly regulated the content of prisoner's communications. That is not so here. The prison's rule which Sands challenges merely limits Sands's ability to keep an electronic typewriter above a certain memory capability in his cell. More important, the application of the standards articulated in Martinez, Safley, and Abbott presupposes that the challenged prison rule or regulation somehow "impinges" upon inmates' constitutional rights. Sands's free speech rights were not impinged at all. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 130-31, 97 S.Ct. 2532, 2540-41, 53 L.Ed.2d 629 (1977). Therefore, we reject Sands's claim that the first amendment requires the prison to allow him to keep his electronic typewriter in his cell. The district court correctly dismissed Sands's first amendment claim. See also Lindquist, 776 F.2d at 858 ("[T]he Constitution does not require that [typewriters] be made available to inmates.") (discussing right of access). Moreover, since the prison's rule on typewriter memory capability does not involve censoring the content of communications made by Sands, there are no grounds upon which Sands can argue that his first amendment rights were violated. Thus, it is absolutely clear that the deficiencies in Sands's first amendment claim could not be cured by amendment. See Hernandez, 861 F.2d at 1423. Consequently, the district court need not consider Sands's first amendment claim further on remand.
 
 
 27
 We therefore affirm the district court's dismissal of Sands's first amendment claim. We reverse the dismissal of Sands's right of access claim and remand so that the district court may allow Sands the opportunity to amend this claim. On remand, the district court should also consider whether the facts alleged by Sands would support a claim of (1) deprivation of property without due process of law, or (2) denial of equal protection of the laws. See Haddock v. Board of Dental Examiners of California, 777 F.2d 462, 464 (9th Cir.1985) ("[A] complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff relies on a different legal theory. Moreover, a pro se civil rights complaint should be liberally construed....") (citation omitted).
 
 
 28
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 Honorable Thomas Zilly, United States District Judge, Western District of Washington, sitting by designation