Lonnie L. HATCH, Plaintiff,

v.

Terry YAMAUCHI, Individually; Jack Reynolds, in his Official Capacity as Director of the Department of Human Services; Dr. Wendell Hall III, M.D., Individually and in his Official Capacity as Forensic Medical Director of the Department of Human Services; Vicky Brooks, Individually and in her Official Capacity; Charlie Pierce, Individually and in his Official Capacity; and Henry Potz, deceased, Individually, Defendants.

No. LR–C–91–212.

United States District Court, E.D. Arkansas, W.D.

Dec. 16, 1992.

Gena A. Gregory, Laser, Sharp, Mayes, Wilson, Bufford & Watts, Little Rock, AR, for plaintiff.

Bruce Paul Hurlbut, Office of General Counsel, Arkansas Dept. of Human Services, Little Rock, AR, for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

This is an action brought under 42 U.S.C. § 1983 in which plaintiff alleges that his constitutional right of access to the courts has been abridged by defendants. This cause was tried to the court on September 2, 1992 and, after the filing of post-trial briefs and proposed findings of fact and conclusions of law, is now ripe for determination.

Plaintiff, Lonnie L. Hatch, is in the custody of the Arkansas State Hospital Forensic Unit pursuant to a commitment order from the Probate Court of Pulaski County, Arkansas. The commitment followed plaintiff's arrest, and ultimate acquittal by reason of insanity, in Columbia County, Arkansas for the offense of criminal slander. While confined at the Forensic Unit, plaintiff has requested copies of all "legal papers" concerning his case, particularly the Order of Acquittal, has asked to see a lawyer, and has often requested writing materials and access to certain law books. Plaintiff contended on direct examination that for the most part these requests have been denied or otherwise ignored.

Defendants deny refusing plaintiff's requests, suggesting instead that on most occasions plaintiff's wishes have been accommodated. Indeed, on cross-examination plaintiff admitted that he has been provided legal papers on occasion, that he has free access to call attorneys, that his out-going legal mail is properly handled, and that he has never been denied visitation with a lawyer.

However, plaintiff maintained on cross-examination that on numerous occasions he has been denied stamps and envelopes and has never been provided with any law books or any advice from a patient advocate. Consistent therewith, defendant Wendell Hall III, M.D. testified that it is not the responsibility of the Forensic Unit to provide patients with legal materials or provide access to a law library.

■ After thorough review and consideration, the Court finds that none of the defendants has *affirmatively* committed any act which has served to deprive plaintiff of access to the courts or any other protected right enjoyed by him. Although pencils and other writing implements have been denied plaintiff at times, it appears that these instances occurred while plaintiff was in the seclusion room and the deprivation was for the purpose of keeping a sharp, and potentially dangerous, instrument out of his possession. But, the hospital's failure to provide committed patients access to law books or to provide patient attorneys, or advocates, is another question.

It is well-settled that prisoners have a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), as do pretrial detainees in jail pending trial. *Lock v. Jenkins*, 641 F.2d 488 (7th Cir.1981). In reliance on these precedents, it has been held that criminal defendants who have been found unfit to stand trial and committed to a mental facility also have the constitutional right of access to the courts. *Johnson by Johnson v. Brelje*, 701 F.2d 1201 (7th Cir.1983).

In *Bounds*, 430 U.S. at 828, 97 S.Ct. at 1498, the Supreme Court held that the "right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers." The Supreme Court also noted that a "source of current legal information would be particularly important so that prisoners could learn whether they have claims at all, as where new court decisions might apply retroactively to invalidate con-

victions." *Id.* at 826 n. 14, 97 S.Ct. at 1497 n. 14. The Court further recognized the value of new legal research or advice to an inmate or patient seeking a new trial or release from confinement.

■ A confined person's right of access to the courts requires the detaining authority to assist that person in the preparation and filing of meaningful legal papers by providing access to a law library or assistance from trained legal personnel. *Harris v. Thigpen,* 941 F.2d 1495 (11th Cir.1991); *DeMallory v. Cullen,* 855 F.2d 442 (7th Cir.1988); *Eldridge v. Block,* 832 F.2d 1132 (9th Cir.1987). In the instant case, according to the testimony of defendant Hall, neither access to a law library or legal materials or assistance from trained legal personnel is provided to patients confined in the Forensic Unit of the Arkansas State Hospital. This failure by those officials in charge of the Forensic Unit, or by those who make its policies, violates plaintiff's constitutional right of access to the courts.

■ Plaintiff presented no evidence to support an award of actual damages herein. He did not, and perhaps could not, establish any specific injury or harm which has resulted from his lack of access to a law library or trained legal assistance. However, under the applicable law, a prisoner claiming lack of access to a law library or legal assistance need not show actual injury resulting from the deprivation. *See, Sands v. Lewis,* 886 F.2d 1166 (9th Cir.1989). Accordingly, the Court finds that plaintiff should recover nominal damages in the amount of ten dollars ($10.00) from defendant Jack Reynolds in his official capacity as Director of the Department of Human Services. As injunctive relief, the Court also directs defendant Reynolds to take the steps necessary to formulate and implement a legal program for patients confined in the Forensic Unit which will safeguard those patients' constitutional right of access to the courts. While the numerous cases on this point have made it clear that state and local authorities have broad discretion in the creation of such legal programs, it is also clear that access to a law library or trained legal assistance is required in some form.

In *Bounds,* 430 U.S. at 831, 97 S.Ct. at 1499, the Supreme Court outlined a number of advantages that the use of trained legal personnel has over law libraries alone. Those advantages may be even greater to detainees who suffer from some mental disease or defect which might very well interfere with their ability to make meaningful and productive use of a law library on their own. The Court asks defendant Reynolds to take this into consideration in creating the legal program for the Forensic Unit. Of course, the ultimate decision is up to him and his associates. Judgment in accordance with this Opinion shall be entered contemporaneously herewith.

### JUDGMENT

Pursuant to the Order entered in this matter on this date, it is Considered, Ordered and Adjudged that plaintiff should be, and is hereby, awarded nominal damages in the amount of $10.00 against defendant Jack Reynolds in his capacity as Director of the Department of Human Services. In addition, defendant Reynolds is directed to formulate and implement a legal services program which will safeguard the right of access to the courts of patients confined at the Arkansas State Hospital Forensic Unit. The remainder of plaintiff's claims, with the exception of attorney's fees and costs, are dismissed.