8 F.3d 30
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lester TELLIS, Plaintiff-Appellant,
v.
S. GODINEZ, et al., Defendant-Appellee.
 No. 91-16296.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 6, 1992.*
Decided Sept. 28, 1993.
 
 Before: GOODWIN, FARRIS and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In a published opinion filed concurrently with this memorandum, a majority of this panel held that the district court erred in its interpretation of Nevada Revised Statute 209.241 when it ruled that Tellis had no protected property interest in the interest earned on his funds placed on deposit in the Nevada "prisoners' personal property fund." See Tellis v. Godinez, No. 91-16296 (9th Cir. Aug. __, 1993). The facts of this case are set out in that opinion.
 
 
 3
 In this memorandum, we address Tellis' argument that he was entitled to access to the $163.72 of his money placed in the fund, and that he was denied his right of meaningful access to the courts by prison officials' refusal to permit him to hire an investigator with that money.
 
 
 4
 Tellis does have a property interest in the money held in his account. See Quick v. Jones, 754 F.2d 1521, 1523 (9th Cir.1985) ("There is no question that [plaintiff's] interest in the funds in his prison account is a protected property interest."). Regulations of the Nevada State Department of Prisons Administration, however, require that prisoners maintain a $200 minimum balance to cover post-release expenses. See Nevada State Department of Prisons Administration Regulation # 258. Prison officials denied Tellis' request to use his $163.72 to hire an investigator for a possible habeas corpus petition because Tellis did not satisfy the minimum balance requirement.
 
 
 5
 Turner v. Safley, 482 U.S. 78 (1987), sets forth the proper standard for testing whether a prison regulation that impinges upon whatever residual constitutional rights prisoners have is "reasonably related to legitimate penological interests." Id. at 89. The state's asserted justification for the minimum balance requirement is to help prepare inmates for eventual release to the community by allowing them to develop a savings account. This interest is sufficiently rational and reasonable so long as the prisoner has some chance for release during his lifetime.[1] Because he will be eligible for parole in 32 years, Tellis does have a chance to be released and the state's interest is sufficiently reasonable as applied to him. The dissent's application of the very deferential Turner v. Safley standard has far too much bite.
 
 
 6
 While Tellis contends that restriction of access to his funds deprives him of "meaningful access to the courts," we do not believe that doctrine is applicable under these facts. The Supreme Court first enunciated the right of "meaningful access to the courts" in Bounds v. Smith, 430 U.S. 817 (1977). There, inmates alleged that the state of North Carolina had denied them "access to the courts" in violation of the Fourteenth Amendment by failing to provide adequate research facilities or legal assistance to help them prepare habeas corpus petitions and § 1983 complaints. The Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. While adhering to the dictates of Bounds, this Circuit has maintained a relatively narrow interpretation of the "meaningful access to the courts" doctrine.[2] As we explained in Sands v. Lewis, 886 F.2d 1166 (9th Cir.1989), "[t]his circuit's decisions have reflected our belief that the Constitution requires that certain minimum standards be met; it does not require the maximum or even the optimal level of access." Id. at 1169. Moreover, "the Constitution does not require the elimination of all economic, intellectual, and technological barriers to litigation." Id.
 
 
 7
 Here, Tellis is not really complaining about denial of his access to the courts as much as a denial of access to factual information. The "touchstone" of the doctrine "is access to the courts, not access to lawyers," or investigators, or information. See Knopp v. Johnson, 977 F.2d 996, 1004 (6th Cir.1992). As the Sixth Circuit explained, the "meaningful access to the courts" right protects
 
 
 8
 "access"--which means getting the courthouse door opened in such a way that it will not automatically be slammed shut on them. Once access has been attained, whether through a complaint that is entirely homemade or through one prepared by or with the help of a writ-writer or paralegal, the court can decide whether the case presented is one that calls for the appointment of a lawyer to represent the plaintiff.
 
 
 9
 Id. at 1006-07. Tellis' argues not that he has had the courthouse door shut on him because he lacks the ability to file his petition, but merely that he lacks access to additional facts that may (or may not) exonerate him. So construed, his claim does not implicate his right of "meaningful access to the courts."
 
 
 10
 The portion of the district court's grant of summary judgment pertaining to Tellis' access to the $163.72 in his account is therefore AFFIRMED.
 
 
 11
 PREGERSON, Circuit Judge, dissenting.
 
 
 12
 I dissent. The Due Process Clause of the Fourteenth Amendment guarantees that prisoners be afforded "access to the courts [that] is adequate, effective, and meaningful." Bounds v. Smith, 430 U.S. 817, 822 (1977). In this case, Tellis's attorney has advised him to hire an investigator to assist in the preparation of an effective habeas petition. Tellis wishes to hire an investigator with his own funds, which are on deposit in a prison trust account. However, prison officials will not release these funds to Tellis because they want him to have at least $200 in his account when he is released from prison in 30 or 40 years. By preventing Tellis from using his own funds to pursue his habeas claims, prison officials have clearly injured Tellis's right of access to the courts.
 
 
 13
 Furthermore, this injury is not justified because the $200 minimum balance requirement is not reasonably related to a legitimate penological interest. See Turner v. Safley, 482 U.S. 78, 89 (1987). The minimum balance requirement appears logically related to the legitimate penological interest of preparing prisoners for eventual release. However, the relationship between the regulation and that interest is not reasonable because (1) Tellis has no alternative means to engage an investigator or develop the factual basis of his claims; (2) Tellis's use of his own funds will not affect prison administration; and (3) prison officials have alternative means of pursuing their asserted interest.[1] Id. at 89-91 (discussing factors relevant to "reasonableness" determination).
 
 
 14
 Therefore, I would reverse the decision of the district court and enter judgment for Tellis on this claim.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We note that the Internal Department of Prisons does recognize an exception to the minimum balance requirement "where the inmate has absolutely no possibility of ever being released."
 
 
 [2]
 The dissent's broad interpretation of the doctrine cannot be squared with this Circuit's narrow interpretation
 
 
 [1]
 For example, prison officials can ensure that Tellis has the opportunity to do prison labor for wages sometime before his release in thirty or forty years. Alternatively, officials could help Tellis apply for general assistance when he is released. See Nev.Rev.Stat. § 428.010; Clark County Social Serv. Dep't v. Newkirk, 789 P.2d 227, 228 (1990) (all poor persons residing in Nevada are entitled to relief under NRS § 428.010)