**Marvin A. STOTTS, Plaintiff,**

v.

**Walter SALAS, et al., Defendants.**

**Civil No. 96–00179 DAE.**

United States District Court,
D. Hawai'i.

Aug. 9, 1996.

Marvin A. Stotts, Dickens County Correctional Facility, Spur, TX, Pro Se.

## ORDER ADOPTING MAGISTRATE'S FINDINGS AND RECOMMENDATIONS DISMISSING PLAINTIFF'S COMPLAINT

DAVID ALAN EZRA, District Judge.

Pursuant to Local Rule 220–2(d), the court finds this matter appropriately decided without a hearing. After reviewing the magistrate's Findings and Recommendations Dismissing Plaintiff's Complaint entered on April 24, 1996, and Plaintiff's objections thereto, the court ADOPTS the magistrate's Findings and Recommendations.

### BACKGROUND

In this action, Plaintiff Marvin A. Stotts ("Plaintiff"), a prisoner at Newton County Community Detention Center ("Newton") in Texas, formerly incarcerated at Halawa Correctional Facility ("HCF") in Hawaii, alleges various complaints against the Defendants, corrections officers of HCF and the State of Hawaii.[1]

On October 20, 1995, ACO's Salas and Apao escorted Plaintiff to special holding

---

1. Defendants are listed as follows: Walter Salas, HCF Adult Correctional Officer ("ACO") ("Salas"); Howard Apao, HCF ACO ("Apao"); Pauline Young, HCF ACO ("Young"); Stephanie Dixon, HCF Case Manager ("Dixon"); Shelley Nobriga, HCF Unit Team Manager ("Nobriga"); Steve Lombardi, HCF Case Manager ("Lombar-
di"); Henry Pakini, HCF Deputy Warden ("Pakini"); Guy Hall, former HCF Warden ("Hall"); Eric Penarosa, HCF Warden ("Penarosa"); George Iranon, Director of the Department of Public Safety ("Iranon"); and the State of Hawaii (collectively "Defendants").

pursuant to a pre-hearing investigation of a complaint filed against Plaintiff.[2] Salas and Apao confiscated Plaintiff's legal materials,[3] telling him they would be placed in storage. Among the items confiscated were seven motions that Plaintiff allegedly planned to file concerning his pending post-conviction relief petition in the First Circuit Court of the State of Hawaii (Hon. Sandra Simms presiding) pursuant to Hawaii Penal Procedure Rule 40 ("Rule 40 petition"). Plaintiff filed his Rule 40 petition on August 10, 1995, and claims he intended his seven confiscated motions to be submitted prior to the November 9, 1995 review of his petition. Six of the motions were amendments to previously filed motions which consisted of deleting the term "ex parte" from the title before re-submission.[4] Plaintiff alleges that the seventh motion was a motion for an extension of time to amend his Rule 40 petition.

From the time of confiscation, Plaintiff began making internal requests for the return of his legal materials. *See* F & R at 4. He states that he also remained in contact with the chambers of Judge Sandra Simms and made a personal plea to Judge Simms for assistance. Plaintiff was told by prison officials that the materials were lost. However, on November 8, 1995, HCF Case Manager Stephanie Dixon personally searched for Plaintiff's legal materials, found them, and returned them to Plaintiff.

Judge Sandra Simms denied Plaintiff's Rule 40 Petition on November 9, 1995. Plaintiff finished deleting ex parte from his six amended motions and mailed them on November 10, 1995. The six motions were received on November 14, 1995. Judge Simms denied the motions on November 15, 1995.

Plaintiff filed his Complaint in this court on February 26, 1996. On April 22, 1996, Plaintiff submitted an application to proceed *in forma pauperis,* and an affidavit in support of his application. In his affidavit, Plaintiff informs the court of his transfer to Newton on December 27, 1995. Plaintiff also requests a temporary restraining order to prevent Defendant HCF Warden George Iranon from transferring Plaintiff back to Hawaii, and seeks injunctive relief restraining Defendants "from any unlawful or unconstitutional acts." Complaint at 15. Plaintiff's Complaint alleges violations of the United States Constitution, of various state laws and regulations, and of 42 U.S.C. § 1983, and prayed for money damages. Plaintiff also filed a Motion for Appointment of Counsel.

On April 24, 1996, Magistrate Judge Francis Yamashita entered Findings and Recommendations Dismissing Plaintiff's Complaint and Order Denying Motion for Appointment of Counsel ("F & R"). The F & R addresses six separate issues: sovereign immunity of the State of Hawaii and its employees in their official capacities; supervisory liability; Plaintiff's right of access to the courts claim; Plaintiff's Eighth Amendment violation claim; Plaintiff's Due Process claim; and Plaintiff's request for appointment of counsel. On July 1, 1996, Plaintiff filed Objections to the magistrate's Findings and Recommendations. Plaintiff objects to the F & R regarding its discussion of sovereign immunity, supervisory liability, right of access to the courts, and Due Process. Plaintiff generally contends that the magistrate misunderstood his claims. His instant objections essentially raise two separate right of access issues; first, the unavailability of Hawaii state law books at Newton after his December 27, 1995 transfer, and second, the 21–day deprivation of Plaintiff's legal materials during his stay at HCF from October 20 to November 8, 1995.

---

2. Plaintiff was found to have physically assaulted another inmate. The record reflects that Plaintiff remained in special holding for the 21 days that are the focus of his right of access claim.

3. Since the items are not disputed, the court refers to them as "legal materials." Plaintiff lists the items in question as his copy of the Hawaii Rules of Penal Procedure, his Rule 40 Petition with Exhibits, the State's response, a motion to amend his Rule 40 Petition, six handwritten motions (ex parte), six non-ex parte motions, and two law books.

4. In Plaintiff's letter to Judge Sandra Simms, received on November 8, 1995, Plaintiff only mentions the "seven or eight" ex parte motions he intended to resubmit to the court. He does not indicate that he intended to submit any other motion or amendment.

*STANDARD OF REVIEW*

**I. 28 U.S.C. § 636**

 Any party may object to a magistrate judge's case dispositive proposed order, findings, or recommendations. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b). The district court must make a de novo determination of those portions of the magistrate judge's report to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b). De novo review means the court must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered. *Ness v. Commissioner,* 954 F.2d 1495, 1497 (9th Cir.1992). Thus, although the district court need not hold a de novo hearing, the court's obligation is to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which objections are made. *United States v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989).

**II. 28 U.S.C. § 1915**

 Title 28 U.S.C. § 1915(d), authorizes federal courts to "dismiss the case if ... satisfied that the action is frivolous or malicious." A district court may review the complaint and dismiss *sua sponte* those claims premised on meritless legal theories or that clearly lack any factual basis. *Denton v. Hernandez,* 504 U.S. 25, 26–27, 112 S.Ct. 1728, 1730–31, 118 L.Ed.2d 340 (1992); *Franklin v. Murphy,* 745 F.2d 1221, 1225 (9th Cir.1984).

 An *in forma pauperis* complaint is legally frivolous if it "embraces ... [an] inarguable legal conclusion." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). A complaint is factually frivolous when "the facts rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton,* 504 U.S. at 33, 112 S.Ct. at 1733 (citing *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1832–33). However, pro se complaints must be liberally construed, particularly when civil rights violations are alleged. *Hughes v.*

*Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980); *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

*DISCUSSION*

**I. Right of Access**

Plaintiff makes two distinct right of access claims. First, Plaintiff contends that his transfer to Newton has obstructed his access to the Hawaii state courts. Plaintiff argues that Hawaii officials should provide him and all Hawaii out-of-state inmates at Newton with Hawaii state law books or alternatively, that officials should transfer him back to Hawaii from Texas. Second, Plaintiff contends that the deprivation of his legal materials while at HCF from October 20, 1995, to November 8, 1995, constitutes a right of access to the courts violation.

Courts have understood *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), to ensure inmates a right of access to the courts through either adequate libraries or legal assistance. *Vandelft v. Moses,* 31 F.3d 794, 796 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 91, 133 L.Ed.2d 47 (1995); *Sands v. Lewis,* 886 F.2d 1166, 1170 (9th Cir.1989); *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 855 (9th Cir. 1985). The Court in *Bounds* stated that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. Prior to *Lewis v. Casey,* —— U.S. ——, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), courts had interpreted *Bounds* as creating a two-prong test to determine whether a right of access violation existed. With respect to the first prong, a plaintiff had to show a core violation: either inadequate law libraries or inadequate legal assistance. The core violation, also known as the "Bounds requirement," conclusively triggered a right of access to the courts claim. *Vandelft,* 31 F.3d at 796; *Gluth v. Kangas,* 951 F.2d 1504, 1508 (9th Cir.1991); *Sands,* 886 F.2d at 1171. Alternatively, if a core violation could not be

established, a plaintiff had to show that a non-core violation caused "actual injury." *Vandelft,* 31 F.3d at 796; *Sands,* 886 F.2d at 1169.

However, the recent Supreme Court holding in *Lewis* refined the "Bounds requirement." In *Lewis,* the Court stated that *any* violation under *Bounds* requires "actual injury" and a "nonfrivolous" underlying claim. *Lewis,* —— U.S. at —— – ——, 116 S.Ct. at 2179–81.[5] That is, an inmate must "demonstrate that the alleged shortcomings in the prison library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* Similarly, in *Sands v. Lewis,* 886 F.2d 1166 (9th Cir.1989), the Ninth Circuit stated that actual injury results from "some specific instances in which an inmate was actually denied access to the courts." *Id.* at 1170–71.

The Supreme Court in *Lewis* stated that sub-par libraries and sub-par legal assistance are not, in themselves, actual injuries that would trigger relief: "Bounds did not create an abstract, freestanding right to a law library or legal assistance." *Lewis,* —— U.S. at ——, 116 S.Ct. at 2180.[6] The Court also suggested that a remedy for a right of access violation should be limited to addressing the inadequacy that produced the injury-in-fact that a plaintiff can establish. *See id.* at —— – ——, 116 S.Ct. at 2184–85. Importantly, the Court cited with approval to *Bounds* itself, in which the Court observed that the district court had "scrupulously respected the limits on [its] role," by "not . . . thrust[ing] itself into prison administration" and instead permitted "[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements." *Id.* (alterations in original).

In addition, the Court in *Lewis* noted that the "Constitution does not require that prisoners be able to conduct generalized research," but rather, "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions or their confinement." *Id.* at ——, —— – ——, 116 S.Ct. at 2182, 2184–85. The Court further stated that prisoners do not have a right to "transform themselves into litigating engines." *Id.* at ——, 116 S.Ct. at 2182.

■ Prior to *Lewis,* federal courts recognized that an out-of-state prisoner might state a substantial right of access claim if the prisoner did not have the legal materials, or someone trained in the law, of the state in which he or she was convicted. *See Story v. Morgan,* 786 F.Supp. 523 (W.D.Pa.1992) (citing *Benjamin v. Potter,* 635 F.Supp. 243 (D.V.I.1986) (recognizing that prisoners who were convicted under criminal statutes in the Virgin Islands and then incarcerated in federal prisons may state valid right of access claims because they lacked appropriate legal materials of the territory), *aff'd,* 838 F.2d 1205 (3d Cir.1988)); *cf. Rich v. Zitnay,* 644 F.2d 41, 42–43 (1st Cir.1981) (holding that prisoners convicted of crimes in Maine and incarcerated in a federal facility in Kansas made prima facie showing of lack of judicial access by pleading that they were without counsel or a library containing Maine law sufficient to survive motion to dismiss). However, in light of the *Lewis* holding that access to either a law library or legal assistance is not a freestanding right, this court determines that a request to send law books to a transferred inmate is subject to the

---

5. The Supreme Court reasoned:

 The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches.

 —— U.S. at ——, 116 S.Ct. at 2179.

6. Specifically, the Court stated:

 Because *Bounds* did not create an abstract, free-standing right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance pro-

gram is sub-par in some theoretical sense. That would be the precise analogue of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by *Bounds* is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

 —— U.S. at ——, 116 S.Ct. at 2180 (internal citations omitted).

same analysis as a claim that a prison law library is inadequate. That is, a plaintiff must at least show actual injury and a non-frivolous underlying claim to warrant the sending of books.

Moreover, while a right of access claim cannot properly be maintained in the absence of actual injury, the Court in *Lewis* emphasized that a demonstration of actual injury does not automatically result in a right of access violation. *See* —— U.S. at ——, 116 S.Ct. at 2185. Citing to its ruling in *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987), the Court reiterated in *Lewis* that a prison regulation impinging on inmates' constitutional rights "is valid if it is reasonably related to penological interests." —— U.S. at ——, 116 S.Ct. at 2185. In *Turner,* the Court stated that, "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict-scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner,* 482 U.S. at 89, 107 S.Ct. at 2262 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977)). In reversing the Ninth Circuit's affirmance of the district court's decision in *Lewis,* the Court stated:

> The District Court here failed to accord adequate deference to the judgment of the prison authorities ... in concluding that [the prison's] restrictions on lockdown prisoners' access to law libraries were unjustified. *Turner*'s principle of deference has special force with regard to that issue, since the inmates in lockdown include "the most dangerous and violent prisoners in the Arizona prison system," and other inmates presenting special disciplinary and security concerns. The District Court made much of the fact that lockdown prisoners routinely experience delays in receiving legal materials or legal assistance, some as long as 16 days, *but so long as they are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury* (which, of course, the District Court did not find here).

—— U.S. at ——, 116 S.Ct. at 2185 (internal citations omitted).

In *Vigliotto v. Terry,* 873 F.2d 1201, 1202–03 (9th Cir.1989), the Ninth Circuit found no constitutional violation where prison officials confiscated and held an inmate's legal materials for three days, two weeks before the prisoner's *pro se* briefs were due. Further, as discussed above, in *Lewis,* the Supreme Court cited routine delays of up to 16 days as a clear example in which access to the courts might be constitutionally sublimated to the interests of the State. *Lewis,* —— U.S. at —— – ——, 116 S.Ct. at 2184–85. *Lewis* and *Vigliotto* do not set durational limits on the confiscation of legal materials; rather, both cases demonstrate the need of courts to balance the conflicting interests of prisoners against the demands of a penological institution.

## II. Right of Access to Hawaii State Law Books

In his Complaint, Plaintiff prays for damages and injunctive relief from the Defendant officials in their individual and official capacities and from the State of Hawaii. The magistrate's F & R recommends dismissing the State of Hawaii and the Defendants in their official capacities under the doctrine of sovereign immunity. The F & R also recommends dismissing Plaintiff's request for injunctive relief because he is no longer incarcerated at HCF, and thus, there is no future behavior of Defendants that the court can enjoin. In the current appeal, Plaintiff objects to the magistrate's conclusion that the request for injunctive relief is moot and therefore should be dismissed. Plaintiff contends that he is requesting injunctive relief on a right of access to the courts claim.

■■■ In his objections, Plaintiff argues that a right of access violation requires that all of Hawaii's out-of-state prisoners at Newton should receive Hawaii law books. Alternatively, Plaintiff now argues that he should be transferred back to Hawaii to obtain access to Hawaii legal resources, despite the fact that in his initial Complaint, Plaintiff asked that Defendants be enjoined from transferring him back to Hawaii. First, as

*Bounds* sets forth and *Lewis* reaffirms, access to law books is only one way a prison may provide inmates with access to the courts. *See* —— U.S. at ——–——, 116 S.Ct. at 2180–81 (stating that "local experimentation" such as "replac[ing] libraries with some minimal access to legal advice and a system of court-provided forms" is encouraged). Second, a plaintiff is required to establish "actual injury" in order to request relief in the form of providing law books. *See id.* Here, Plaintiff asks for legal books for unnamed inmates who have shown no actual injury or specific need. *See* Plaintiff's Objections at 7. Moreover, Plaintiff's request for law books for a group of unidentified claimants with unidentified injuries has no factual or legal basis because he lacks standing to assert such claims. This court summarily DISMISSES any such claims as frivolous under 28 U.S.C. § 1915(d).

■ Second, Plaintiff has not shown in his specific case that the lack of law books caused actual injury that warrants relief. While Plaintiff had a pending case in the First Circuit Court of Hawaii, he acknowledges that Hawaii officials in fact ultimately sent him Hawaii legal materials. Plaintiff's Objections to the Magistrate's Findings and Recommendations ("Plaintiff's Objections") at 7. Plaintiff had sufficient resources to satisfy *Lewis'* explicit "limited capability" requirement that prisoners need only "be able to present their grievances to the courts." *Lewis,* —— U.S. at ——, 116 S.Ct. at 2184. Nevertheless, assuming *arguendo* that Plaintiff could show actual injury, the remedy would be narrowly tailored to provide Plaintiff with only the necessary resources. The United States Supreme Court has made it clear that the Due Process Clause of the Fourteenth Amendment provides constitutional safeguards prior to conviction, but, upon a valid conviction, does not provide a federal liberty interest in guaranteeing housing in a particular penal institution. *See Olim v. Wakinekona,* 461 U.S. 238, 247, 103 S.Ct. 1741, 1746, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976). Thus, the lack of Hawaii State law books would not itself warrant Plaintiff's transfer back to HCF. Accordingly, the court DIS-MISSES Plaintiff's request for injunctive relief.

### III. 21–Day Confiscation of Legal Materials

In his Complaint, Plaintiff also alleges that prison officials violated his right of access to the courts by depriving him of his legal materials for 21 days. The magistrate recommended dismissing Plaintiff's complaint on the basis that Plaintiff had not shown actual injury.

This court understands Plaintiff as making two distinct arguments in his objections to the F & R. First, Plaintiff reasserts that the 21–day confiscation is a freestanding violation of his right of access to the courts. Second, this court liberally construes Plaintiff's objections to state that the confiscation caused actual injury.

■ First, this court finds that the 21–day confiscation itself does not rise to the level of a constitutional violation. Because the Supreme Court in *Lewis* announced that actual injury was required for any cognizable right of access claim, Plaintiff's 21–day deprivation must result in an actual injury before it amounts to a constitutional violation. *See* —— U.S. at ——–——, 116 S.Ct. at 2179–80. The deprivation of personal files alone does not fulfill the "actual injury" requirement. *Id.* at ——, 116 S.Ct. at 2185. Plaintiff attempts to distinguish his case from *Vigliotto,* where the Ninth Circuit held that a three-day deprivation did not amount to a constitutional violation. 873 F.2d at 1202–03. Here, Plaintiff argues that his 21–day deprivation is more violative than three days. However, *Vigliotto* and *Lewis* do not set durational limits on certain deprivations; rather, both cases, read together, indicate that courts have broad discretion in weighing the competing interests of prisoners and the State. Accordingly, under *Lewis,* Plaintiff's claim that his 21–day deprivation of legal materials is a freestanding violation must fail.

■ Second, Plaintiff seems to contend that he suffered actual injury as a result of the delay in returning his legal materials because all of his amended motions were denied and he did not submit a motion for an

extension of time to amend. However, according to the Supreme Court in *Lewis*, actual injury does not conclusively trigger a right of access violation. *Id.* at ——, 116 S.Ct. at 2185. Rather, this court must examine whether the injury was balanced by a legitimate State interest in prison safety.

In weighing the prisoner's interest, the court is not persuaded that Plaintiff's alleged "actual injury" is significant enough to warrant the court's intrusion into HCF's management of its lockdown prisoners. Plaintiff alleges that the six original ex parte motions were not considered on their merits because they had the term "ex parte" in their titles. He also alleges that the 21–day deprivation resulted in the dismissal of six amended motions without consideration of their merits. However, the record suggests that Plaintiff's ex parte motions were dismissed because the underlying Rule 40 petition was found to be meritless by Judge Simms. *See* Complaint, Exhibit "C" at 1–8 and Exhibit "F". All six of Plaintiff's (ex parte) motions requested that he be permitted to collect supporting evidence for his Rule 40 petition.[7] Thus, Plaintiff's requests for investigators, more depositions or further collection of evidence were moot and dismissed accordingly. Nevertheless, even if Plaintiff were correct in alleging that the filing of the six amended motions had been denied because they were untimely filed, their denial could not be fully attributed to the 21–day delay. Regardless of whether Plaintiff is correct in asserting that Judge Simms did not review the six amended motions on their merits, Plaintiff had three months in which to amend his motions.[8] The 21–day deprivation did not in any way obstruct Plaintiff's initial access to the courts.

Plaintiff also claims that the delay precluded him from filing a motion for an extension of time to amend his Rule 40 petition. Even construing Plaintiff's allegations liberally, the court finds that there was no actual injury.[9] An actual injury exists where there is a specific instance in which an inmate was actually denied access to the courts. *See Sands*, 886 F.2d at 1170–71. Here, despite Plaintiff's claim that he did not file a motion for an extension of time to amend because his legal materials were confiscated, the granting of such a motion is purely discretionary in nature. Were this court to adopt Plaintiff's argument, every confiscation or prison administrator's delay in returning legal materials could result in a "no filing" that would raise a right of access violation. Such a result would be contrary to the Supreme Court's holding in *Lewis*.

Turning to the interest of the State, the court determines that the delay was attributable to a reasonable penological interest. The Supreme Court in *Lewis* established that although a prisoner in lockdown may experience delays in receiving legal documents, actual injury resulting from such delays may be outweighed by the interest of the State in its administration of safe prisons. *See Lewis*, —— U.S. at ——, 116 S.Ct. at 2185. The extra security and closed quarters in lockdown require special restrictions, and prisoners are allowed to retain only a few possessions. *See* Plaintiff's Objections, Exhibit "H" at 3. Delays that result from the storage of possessions are likely to accompany the reasonable penological interest of a

---

7. Plaintiff's six motions were entitled: ex parte motion for court fund to hire an investigator; ex parte motion for litigation expenses to hire a stenotypist to record depositions from out of state material witnesses; ex parte motion requesting an order to be issued to Sgt. Kathleen Osmand of the Honolulu Police Department causing her to preserve all evidence submitted in report number 90337883; ex parte motion for two subpoenas to be issued compelling two witnesses to provide material depositions in support of petitioner's H.R.P.P. Rule 40 petition; and ex parte motion for an order compelling Deputy Prosecutor David Minkin to release to Defendant, Marvin A. Stotts, any statement (recorded), deposition or affidavit of Marvin A. Stotts.

8. Regardless of when Plaintiff decided to amend his motions, he had the time available from the date he filed the motions, August 10, 1995, to the date of review, November 9, 1995 to amend.

9. The court also notes that Plaintiff's Rule 40 petition was filed on August 10, 1995, and that he had three months to file a motion for an extension of time to amend before the Rule 40 petition was reviewed on November 9, 1995. Plaintiff's inability to file a motion for an extension of time to amend cannot be solely attributed to the 21–day delay. Moreover, prior to Judge Simms review of the Rule 40 petition, Plaintiff's legal materials were returned to him.

lockdown. In this case, Plaintiff was placed in lockdown as a result of allegedly assaulting another inmate; his legal materials were confiscated and placed in storage. This court finds that the resulting delay was within the reasonable discretion of HCF administrators in advancing a State interest. Because *Turner* requires this court to defer to the decisions of HCF administrators in circumstances such as those presented here, the court finds that the 21–day delay was the product of prison regulations reasonably related to the State's legitimate penological interests (assuming Plaintiff could establish actual injury, which he has not) and that it was not constitutionally significant. Accordingly, the court DISMISSES Plaintiff's right of access to the courts claim.

## IV. Due Process

Where the underlying claim of right of access is dismissed, there is no cognizable substantive Due Process claim. A claim is legally frivolous if it "embraces ... [an] inarguable legal conclusion." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1990). Plaintiff contends that he was denied substantive due process when he was denied meaningful access to the courts. His argument is premised on the existence of an underlying violation. This court has found that there was no constitutional violation of Plaintiff's right of access to the courts. Accordingly, the court DISMISSES Plaintiff's Due Process claim.

## V. Supervisor Liability

The Ninth Circuit has stated that "[a] supervisor is liable for constitutional violations of his subordinates if the supervisor participated in or directed the violation, or knew of the violations and failed to act to prevent them." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). A prisoner must show that the supervisor had either personal involvement in the violation or a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989). Here, because the court finds that the subordinate Defendants have committed no constitutional violation, the issue of supervisor liability is MOOT. Accordingly, the court DISMISSES all Defendants with respect to Plaintiff's supervisor liability claim.

## CONCLUSION

For the reasons set out above, the court ADOPTS the magistrate's findings and recommendations. Plaintiff's Complaint is hereby DISMISSED.

IT IS SO ORDERED.